**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHARLOTTE HORTON, as guardian of Anna R. Richardson, | |
| Plaintiff, | 2007 CV 6530 |
| vs. | Judge Lindberg |
| COUNTRY MORTGAGE SERVICES, INC.; FREEMONT INVESTMENT AND LOAN CO., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., | Magistrate Nolan |
| Defendants. | |

**COUNTRY MORTGAGE SERVICES, INC.'S**
**FRCP 12(b)(6) MOTION TO DISMISS COUNTS III AND IV OF THE COMPLAINT**

Defendant, COUNTRY MORTGAGE SERVICES, INC. ("CMSI"), by and through

its attorneys, DAVID W. INLANDER and RONALD D. MENNA, JR., of Fischel &

Kahn, Ltd., as and for its FRCP 12(b)(6) Motion To Dismiss Counts III and IV of the

Complaint, states as follows:

1.      This lawsuit arises from an alleged home improvement scam by JD

Homes, Inc. ("JD"). According to the complaint, after the JD received nearly $100,000

from plaintiff, who obtained those funds through a mortgage refinance loan, JD

performed no work on plaintiff's two-flat building.

2.      Plaintiff has sued CMSI, the mortgage broker, the lender and the nominee

of the lender.  She has not sued JD.

3.      As is shown below, Count III is barred by the applicable statue of

limitations and Count IV fails to state any viable claim against CMSI upon which relief

may be granted.

## STATEMENT OF FACTS[1]

4.      Anna Richardson owns a two-flat residence in Chicago, Illinois (the "Property"). Complaint, ¶ 9. In 2003, Ms. Richardson refinanced her mortgage on the Property by obtaining a loan from Bank One which was serviced by Chase Home Finance. *Id.*, ¶ 10.

5.      She developed dementia in 2004 and it developed into a form of severe dementia before October 2005. *Id.*, ¶ 11. Due to Ms. Richardson's failing medical condition, Plaintiff became Ms. Richardson's power of attorney and handled all of her financial affairs, including paying the monthly mortgage payments to Chase. *Id.*, ¶ 12.

6.      In October 2005, JD convinced Ms. Richardson to allow it to perform some work on the Property. *Id.*, ¶ 13. JD said that it would arrange for the financing of the work and shortly thereafter, CMSI contacted her. *Id.*, ¶ 14.

7.      On October 24, 2005, the loan at issue was closed at Ms. Richardson's home, with a CMSI loan officer present. *Id.*, ¶ 15. On information and belief, JD received over $100,000 from the loan proceeds, *id.*, ¶ 19, but never returned to do any work. *Id.*, ¶ 20.

8.      "Subsequently, Chase sent notification to [Plaintiff] that its loan had been paid off. [Plaintiff], unaware of the recent events, contacted Chase to inquire about the source of the funds." *Id.*, ¶ 21. "[Plaintiff] became informed that a new loan for $150,000

---

[1]      Because CMSI has moved to dismiss the complaint, the following allegations pertaining to the claims against it from the complaint, are taken as true for purposes of this motion. ***Menominee Indian Tribe of Wisconsin v. Thompson***, 161 F. 3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999).

had been secured by [Ms. Richardson's] home." *Id.*, ¶ 22. "[Plaintiff] inquired of [Ms. Richardson] regarding the loan, and [Ms. Richardson] denied ever taking out a loan. [Ms. Richardson's] failure to remember taking out a loan was due to her unstable mental capacity arising from her dementia." *Id.*, ¶ 23. "[Plaintiff] contacted an attorney who assisted her in obtaining information regarding the subject loan." *Id.*, ¶ 24.

9.      In Count III, Plaintiff alleges that CMSI violated the Real Estate Settlement Procedures Act, 18 U.S.C. § 2607(a), by receiving an illegal kickback in the form of a yield spread premium. *Id.*, ¶ 21.

10.     In Count IV, Plaintiff contends that CMSI violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 by: "misrepresent[ing] … the amount of fees they [sic] would be charged in connection with the loan"; "fail[ing] to disclose … that it had entered into a scheme with Freemont"; "failing to disclose … that they [sic] were paying higher than market rate interest rate [sic] on the loans [sic]"; "fail[ing] to disclose … that it was going to obtain a higher profit from the loans due to the increased [sic] rate"; and "charg[ing] a fee in connection with the loans [sic] well in excess of the reasonable market rate [sic] for the services they [sic] performed." *Id.*, ¶ 74.

## ARGUMENT

11.     A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ***Cushing v. City of Chicago***, 3 F.3d 1156, 1159 (7th Cir. 1993), *quoting* ***Hishon v. King & Spalding***, 467 U.S. 69, 73 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the

complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. ***Cornfield v. Consolidated High School District No. 230***, 991 F.2d 1316, 1324 (7th Cir. 1993). However, the court need not accept as true conclusory legal allegations. ***Baxter v. Vigo County School Corp.***, 26 F.3d 728, 730 (7th Cir. 1994).

## I.  PLAINTIFF'S CLAIM FOR RESPA DAMAGES IS BARRED BY THE ONE-YEAR STATUTE OF LIMITATION

12.     Plaintiff's claim for damages pursuant to the Real Estate Settlement Procedures Act, 18 U.S.C. § 2607(a) ("RESPA") (Count III), must be dismissed because it is barred by the statute's one-year limitations period.

13.     Although "[t]he Federal Rules of Civil Procedure provide that a statute of limitations defense is an affirmative defense which should be set forth in 'pleading to a preceding pleading,'" a limitations defense is "an appropriate ground for dismissal if it 'clearly appears on the face of the complaint.'" ***E.E.O.C. v. Park Ridge Public Library***, 856 F.Supp. 477, 480 (N.D. Ill. 1994), *citing* ***Rylewicz v. Beaton Services***, 698 F.Supp. 1391 (N.D. Ill. 1988).

14.     In other words, "the complaint must facially show noncompliance with the limitations period." *Id., citing* ***Morgan v. Kobrin Securities***, 649 F.Supp. 1023 (N.D. Ill. 1986).

15.     Here, the complaint demonstrates the requisite "non-compliance" with the statute of limitations for RESPA.

16.     Under RESPA, "[a]ny action pursuant to the provisions of section 2605,

2607, or 2608 of this title may be brought in the United States district court … within … 1 year in the case of a violation of section 2607 … of this title from the date of the occurrence of the violation ….” 12 U.S.C. § 2614.

17.     Count III alleges that the RESPA violations occurred during the October 24, 2005, closing. Because Plaintiff filed the Complaint on November 19, 2007, more than two (2) years after the allege violations occurred, her RESPA claim is time barred and should be dismissed.

18.     Under the facts alleged in the Complaint, Plaintiff cannot properly contend her claims are timely, through application of the doctrine of equitable tolling, or through the federal discovery rule. In *Estate of Henderson v. Meritage Mortgage Corp.*, 293 F.Supp.2d 830 (N.D. Ill. 2003), the court, applying the federal discovery rule, extended the accrual date on an estate’s claims under TILA, RESPA, and the Home Ownership and Equity Protection Act. *Id.*, at 833, 835. There, the plaintiff estate alleged that the deceased borrower, who suffered from “advanced Alzheimer’s disease” at the time of the loan, “could not read, do simple arithmetic, consistently recognize her own son, feed or dress herself, remember the date or use the phone book to make phone calls.” *Id.*, at 835.

19.     Based on those specific allegations, the *Estate of Henderson* court concluded, the deceased borrower “lacked the ability to comprehend her injury and, due to advanced Alzheimer’s Disease, to act upon her legal rights,” which delayed accrual of the applicable limitations periods. *Id*. The court did not reach the question of equitable tolling, but noted that the doctrine similarly could apply where “despite all

due diligence [the plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Id.* at 834; *citing **Cada v. Baxter Healthcare Corp.**,* 920 F.2d 446, 451 (7ᵗʰ Cir. 1990).

20.    Here, unlike ***Estate of Henderson***, the complaint contains no grounds to toll, or delay the commencement of, the one-year limitations periods contained in RESPA. Rather, Plaintiff pled that: (A) she was Ms. Richardson's "power of attorney and handled all of [Ms. Richardson's] financial affairs including the payment of her monthly mortgage payments to Chase", Complaint, ¶ 12: (B) she was notified by Chase that "its loan had been paid off", *id.*, ¶ 21; (C) "unaware of the recent events, [Plaintiff] contacted Chase to inquire about the source of the payoff funds", *id.*; (D) she "became informed that a new loan for $150,000 had been secured by [Ms. Richardson's] home, *id.*, ¶ 22; and (E) she "contacted an attorney who assisted her in obtaining information regarding the subject loan", *id.*, ¶ 24. Presumably, since no mortgage foreclosure proceeding has been pled, Plaintiff has made Ms. Richardson's monthly payments of principal and interest on the subject loan.

21.    At worst, Plaintiff alleges that she was not provided with documents by CMSI until August 14, 2007. However, this Court can take judicial notice of the fact that the subpoena *duces tecum* was not issued until June 12, 2007. This is almost twenty (20) months after the closing of the subject loan.

22.    Because the complaint, on its face, demonstrates that Plaintiff's RESPA claim is time-barred, and because Plaintiff alleges no basis to toll or delay the accrual of the applicable one-year limitations periods, this claim must be dismissed.

I.     **PLAINTIFF'S CANNOT STATE A CAUSE OF ACTION FOR BREACH OF THE ILLINOIS CONSUMER FRAUD ACT**

23.     Plaintiff's other claim against CMSI, for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/2 (Count IV), should be dismissed for failure to state a claim upon which relief can be granted.

24.     Under the ICFA, parties are prohibited from employing practices that are deemed, among other things, "unfair" or "deceptive":

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

25.     To establish a violation of the ICFA, a plaintiff must plead the following elements: (1) the defendant engaged in a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the act or practice; and (3) the act or practice occurred in the course of conduct involving a trade or commerce. *Zekman v. Direct Am. Marketers, Inc.*, 182 Ill.2d 359, 695 N.E. 2d 853, 860 (1998); *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 607 N.E.2d 194, 198 (1992).

26.     In order to state a claim under the ICFA based upon the payment of a "yield spread premium" by a lender to a broker in violation of RESPA's anti-kickback

provision, a plaintiff must allege:  (1) the existence of an agreement between the lender

and broker whereby the broker promises to refer settlement service business to the

lender; (2) the transfer of a thing of value between the lender and broker based upon

that agreement; (3) the referral of settlement service business by the broker to the

lender; and (4) either that (A) the broker received a yield spread premium without

providing any goods or services of the kind typically associated with a mortgage

transaction or (B) if the broker did provide such goods or services, the total

compensation paid to the broker was not reasonably related to the total value of the

goods or services actually provided. ***Johnson v. Matrix Financial Services Corp.***, 354

Ill.App.3d 684, 820 N.E.2d 1094, 1103-04 (1st Dist. 2004), *appeal denied*, 214 Ill.2d 534, 830

N.E.2d 3 (2005).

27.    A plaintiff must plead a consumer fraud claim with the same particularity

and specificity that has always been a prerequisite to an action for common law fraud.

***Guinn v. Hoskins Chevrolet***, 361 Ill.App.3d 575, 836 N.E.2d 681, 692 (1st Dist. 2005).

28.    Here, F.R.C.P. 9(b) provides: "(b) *Fraud, Mistake, Condition of the Mind*. In

all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

person may be averred generally."

29.    The "particularity" requirement applies not only to  claims expressly

denominated as "fraud allegations", but also claims that are "grounded in fraud or

"sound" in fraud, *see* ***Borsellino v. Goldman Sachs Group, Inc.***, 477 F.3d 502, 507 (7th

Cir. 2007), as well as other claims involving deceptive conduct. *See* ***Simpson v. AOL***

*Time Warner Inc.*, 452 F.3d 1040, 1046 (9th Cir. 2006).

30.    Thus, here, Plaintiff's conclusory allegations in ¶¶ 63, 74, and 76-78 fail to comply with her obligations under F.R.C.P. 9 and she should either file a more definite statement pursuant to F.R.C.P. 12(e), be stricken pursuant to F.R.C.P. 12(f) or, alternatively, be dismissed pursuant to F.R.C.P. 12(b).

31.    Moreover, the IFCA expressly excludes, from its scope, "actions or transactions" that are "authorized" by federal or state law:

> Nothing in this Act shall apply to any of the following:
> (1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.

815 ILCS 505/10b. *See also* **Bober v. Glaxo Wellcome PLC**, 246 F.3d 934, 941 (7th Cir. 2001) ("the cases stand for the proposition that the [ICFA] will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations. If the parties are doing something specifically authorized by federal law, section 10b(1) will protect them from liability under the [ICFA]").

32.    Illinois courts have held that if an action does not violate RESPA, then there is no claim under ICFA. ***See Weatherman v. Cary-Wheaton Bank of Fox Valley***, 186 Ill.2d 472, 713 N.E.2d 543, 550 (1999) (concluding that "defendant's compliance with RESPA in this case renders defendant exempt from liability under the Consumer Fraud Act.").

33.    RESPA contains a safe harbor provision which exempts certain types of payments from being considered prohibited referral fees:

**Section 2607. Prohibition against kickbacks and unearned fees**

* * *

(c)    *Fees, salaries, compensation, or other payments*
         Nothing in this section shall be construed as prohibiting
         (1) the payment of a fee … (C) by a lender to its duly appointed
agent for services actually performed in the making of a loan, (2) the
payment to any person of a bona fide salary or compensation or other
payment for goods or facilities actually furnished or for services actually
performed, (3) payments pursuant to cooperative brokerage and referral
arrangements or agreements between real estate agents and brokers, ….

12 U.S.C. § 2607(c).

34.    In fact, recent cases in which the propriety of yield spread premiums have

been raised find that they are not illegal kickbacks or referral fees. *See, **Culpepper v.**

**Irwin Mortg. Corp.**, 491 F.3d 1266, 1273-74 (11th Cir. 2007); **Schuetz v. Banc One Mortg.**

**Corp.**, 292 F.3d 1004, 1014 (9th Cir. 2002), *certiorari denied*, 123 S.Ct. 994, 537 U.S. 1171

(2003).

35.    These cases were decided after the 2001 HUD Statement of Policy,

concerning the treatment of mortgage lender payments to mortgage brokers of yield

spread premiums relate to RESPA, which holds that:

> It is HUD's position that neither Section 8(a) of RESPA nor the 1999
> Statement of Policy supports the conclusion that a yield spread premium
> can be presumed to be a referral fee based solely upon the fact that the
> lender pays the broker a yield spread premium that is based upon a rate
> sheet, or because the lender does not have specific knowledge of what
> services the broker has performed. * * * Whether or not a yield spread
> premium is legal or illegal cannot be determined by the use of a rate sheet,
> but by how HUD's test applies to the transaction involved.

**Dominguez v. Alliance Mortgage Company**, 226 F.Supp.2d 907, 912 (N.D. Ill. 2002),

*citing* Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of

Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and

Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed.Reg. 53052, 53055

(October 18, 2001).

36.     This is the gravamen of Plaintiff's case – the yield spread premium is an

illegal kickback solely because of the alleged use of a rate sheet. Complaint, ¶¶ 46-48.

37.     Thus, Plaintiff cannot state a cause of action for breach of the IFCA.

38.     In any event, since there is no cause of action under RESPA, there can be

no breach of the IFCA.

39.     Therefore, Count IV should also be dismissed with prejudice.

Dated: January 4, 2008

Respectfully submitted,
**COUNTRY MORTGAGE SERVICES, INC.**

By:   /s/ Ronald D. Menna, Jr.
        One of Its Attorneys

David W. Inlander
Ronald D. Menna, Jr.
**FISCHEL & KAHN, LTD.**
Suite 2850
190 S. LaSalle Street
Chicago, Illinois 60603
312-726-0440
312-726-1448 [FAX]
W:\DWI\T73-40 Country Mortgage Services adv Richardson\Pleadings\MTD.doc