IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLOTTE HORTON, as guardian of the estate of Anna R. Richardson, adjudicated disabled person | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  07 C 6530 |
| COUNTRY MORTGAGE SERVICES, INC.; an Illinois corporation; FREMONT INVESTMENT & LOAN a California corporation; and, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation. | ) ) ) ) ) ) ) | Judge Lindberg Magistrate Judge Nolan |
| Defendants. | ) | |

**FREMONT'S AND MERS' AMENDED
ANSWER, AFFIRMATIVE DEFENSES, AND CROSS CLAIM**

Defendants Fremont Investment & Loan ("Fremont") and Mortgage Electronic

Registrations Systems, Inc. ("MERS"), by their attorneys, answer and respond to Plaintiff

Charlotte Horton's (the "Plaintiff") Complaint as follows:

Alleged Nature of the Action

1.      This action is brought by the guardian of Anna R. Richardson seeking rescission of a mortgage loan made to Anna while she suffered from dementia. The loan officer closed the loan in Anna's home however failed to leave her with any documentation of the loan including notices and disclosures required to be provided to Anna by the federal Truth In Lending Act. The violation of TILA gave rise to a statutory right for Anna to rescind the subject loan. Additionally, the mortgage broker and lender engaged in a kickback scheme where the mortgage broker was given a referral fee for arranging the loan to Anna in violation of the Real Estate Settlement Procedure Act.

**ANSWER:**    Fremont and MERS deny that they engaged or participated in any wrongdoing

whatsoever, and deny any and all alleged liability to Plaintiff.   Fremont and MERS lack

knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph,

including those relating to the alleged conduct of Defendant Country Mortgage Services, Inc.

<u>Parties</u>

2.     Charlotte Horton is the plaintiff in her capacity as guardian of the estate of Anna R. Richardson. Horton was appointed as guardian for Anna R. Richardson in an action styled In Re Estate of Anna R. Richardson, 06 P 527 in the Circuit Court of Cook County, Probate Division.

**ANSWER:**   Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

3.     Country Mortgage Services, Inc., ("Country Mortgage") is an Illinois corporation and is the business or procuring mortgage for its customers as a mortgage broker. Country Mortgage arranged for the mortgage that is the subject of this action.

**ANSWER:**   Fremont and MERS admit that Country Mortgage performed services as a

mortgage broker for the loan at issue, but lack knowledge or information sufficient to admit or

deny the remaining allegations in this Paragraph.

4.     Fremont Investment & Loan Company ("Fremont") is a California corporation with its principal offices located in Brea, California and does business in Illinois. Fremont originates loans to consumers to be secured by the consumer's principal residence by a mortgage.  Fremont has originated more than 25 such transactions in the calendar year preceding the subject loan.

**ANSWER:**   Fremont admits that it is a California corporation licensed by the California

Department of Financial Institutions as an industrial bank, that it does business in Illinois, that its

principal offices are located in Brea, California, and that it was at one time in the business of

originating mortgage loans to consumers, some of which loans are or were secured by mortgages

on the borrowers' principal residences.  Fremont further admits it has originated more than 25

such transactions in the calendar year preceding the loan at issue in this case.  Fremont denies

any remaining allegations in this Paragraph.  MERS lacks knowledge or information sufficient to

admit or deny the allegations in this Paragraph.

5.     Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation with its principal place of business located in Vienna, Virginia. MERS acts as the nominee and holder of mortgages on behalf of mortgage lenders and other holders of monetary

obligations secured by real estate, including real estate located in Illinois and within this judicial district. MERS, as the nominee of Fremont, is the holder of the Mortgage that is the subject of the present action.

**ANSWER:**   Fremont and MERS admit that:  (1) MERS is a Delaware corporation with its principal place of business in Vienna, Virginia;  (2) that MERS often acts as mortgagee and nominee on behalf of mortgage lenders and other holders of monetary obligations secured by real estate, including real estate located in Illinois and within this district; and  (3) that MERS is the mortgagee of record as nominee of Fremont and its successors and assigns with respect to the loan at issue in this case.  Fremont and MERS deny the remaining allegations contained in this Paragraph.

<u>Jurisdiction and Venue</u>

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1332.

**ANSWER:**   Fremont and MERS admit that the Court has subject matter jurisdiction regarding Counts I and III pursuant to 28 U.S.C. § 1331, and that the Court may exercise subject matter jurisdiction over Plaintiff's purported state law claims pursuant to 28 U.S.C. § 1367. Fremont and MERS deny that 28 U.S.C. § 1332 is applicable, but do not contest subject matter jurisdiction here.

7.     This Court has jurisdiction over the defendants who are all doing business in this State and have availed themselves of this State's benefits and protections.

**ANSWER:**   Fremont and MERS do not contest personal jurisdiction here.

8.     Venue is proper in this Court as defendants reside within this judicial district and a substantial portion of the events giving rise to this action occurred within this judicial district.

**ANSWER:**   Fremont and MERS deny they reside within this judicial district, but do not otherwise contest venue here.

<u>Allegations Common To Each Cause Of Action</u>

9.      Anna Richardson is an elderly woman born October 2, 1912. Richardson is the owner of a two unit building located at 1647 S. Central Park Avenue in Chicago, Illinois and has been for nearly 50 years.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

10.      In March of 2003 Anna refinanced her mortgage on the property by taking out a loan with Bank One in the amount of $25,800. The loan was serviced by Chase Home Finance.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

11.      Anna developed dementia beginning by at least 2004 and it developed into a form of severe dementia before October of 2005.

**ANSWER:**    Fremont and MERS deny that Richardson developed severe dementia before October, 2005.  Fremont and MERS lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

12.      Due to Anna's failing medical condition, Horton became Anna's power of attorney and handled all of her financial affairs including the payment of her monthly mortgage payments to Chase.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

13.      In October of 2005 a general contractor named JD Homes, Inc. contacted Anna, without Horton's consent or knowledge, and convinced her to allow the company to perform some work on the property.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

14.      The general contractor informed Anna that the company would arrange for financing of the work. Shortly thereafter Anna was contacted by a loan officer employed by CMS.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

15.    On October 24, 2005 the loan officer visited Anna at her home and brought to her numerous documents in connection with closing the loan that was to pay of the home remodeling.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

16.    The loan officer did not explain any of the documents to Anna, nor could Anna read or understand the documents she was given.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

17.    The loan officer instructed Anna to sign the documents and Anna complied.

**ANSWER:**    Fremont and MERS admit that Richardson signed the documents and disclosures

in connection with the loan at issue, but lack knowledge or information sufficient to admit or

deny the remaining allegations in this Paragraph.

18.    After the Anna completed signing the documents the loan officer left with them and did not leave any copies for Anna's records.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

19.    On information and belief, the contractors were given two checks from the proceeds of the loan totaling over $100,000 by the title company or the loan officer.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

20.    The contractor never returned to Anna's home to do any work.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

21.    Subsequently, Chase sent notification to Horton that its loan had been paid off.

Horton, unaware of the recent events, contacted Chase to inquire about the source of the payoff funds.

**ANSWER:**    Fremont and MERS admit that some of the proceeds of the loan at issue were applied to pay off a loan secured by a then-existing, valid, first-lien mortgage on the subject property in favor of Chase.  Fremont and MERS lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

22.    Horton became informed that a new loan for $150,000 had been secured by Anna's home.

**ANSWER:**    Fremont and MERS admits that the loan at issue is secured by a valid first-lien mortgage on the subject property, but lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

23.    Horton inquired of Anna regarding the loan, and Anna denied ever taking out a loan. Anna's failure to remember taking out a loan was due to her unstable mental capacity arising from her dementia.

**ANSWER:**    Fremont and MERS affirmatively state that Fremont extended a loan to Richardson which is secured by a valid first-lien mortgage on the subject property for which MERS is mortgagee, as nominee for Fremont.  Fremont and MERS lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

24.    Charlotte contacted an attorney who assisted her in obtaining information regarding the subject loan. On or about August 14, 2007 counsel for CMS forwarded certain documents related to the loan to counsel for Horton. Some of the documentation obtained included the following the Settlement Statement for the loan indicating the accounting for the loan proceeds and that the lender was Fremont. A copy of the Settlement Statement is attached at Exhibit A.

**ANSWER:**    Fremont and MERS admit that the document attached as Exhibit A to the Complaint appears to be a true and correct copy of the settlement statement for the loan at issue, but lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

25.    The Settlement Statement reveals that the principal loan amount was $150,000; the loan proceeds were $104,388.38; and the total fees paid to CMS were$5,560.50.

**ANSWER:**    Fremont and MERS admit that:  (1) the original principal balance due on the loan at issue was $150,000; and  (2) Country Mortgage received a total of $5,560.05 in payment for various services and other items rendered or provided in connection with the loan at issue. Fremont and MERS lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph, including the allegation of the amount of the "loan proceeds," except that Fremont admits that the Settlement Statement indicates that Richardson received $104,388.38 directly from the proceeds of the loan at issue.

26.    Charlotte has been unable to locate or contact the general contractors who received the proceeds for the subject loan and no work has ever been done on Anna's home.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

Count I
Alleged Violation of Truth In Lending Act
(Against Fremont and MERS)

27.    Plaintiff realleges paragraphs 1 to 26 as though they were fully realleged herein.

**ANSWER:**    Fremont and MERS restate and incorporate by reference their answers and responses to Paragraphs 1-26 above as its answer and response to this Paragraph.

28.    The loan made to Anna was for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes and to pay for remodeling of the home.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

29.    At the closing of the loan Anna was requested to sign a Mortgage to convey a security interest in her home to MERS, as the nominee of Fremont.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph.

30.    Because this transaction was secured by Anna's home and was not entered into for purposes of its initial purchase or construction, the loan was made subject to Anna's rescission rights under the Truth In Lending Act, 15 U.S.C. §1635, and implementing Federal Reserve Board Regulation Z, 12 C.F.R. Part 226.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the

allegations in this Paragraph.

31.    Regulation Z reads in pertinent part:

§226.23
*(a)    Consumer's right to rescind.*
(1)    In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.
(2)    To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.
(3)    The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.
 *(b )Notice of right to rescind:*
(1)    In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
(i)    The retention or acquisition of a security interest in the consumer's principal dwelling.
(ii)    The consumer's right to rescind the transaction.
(iii)    How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
(iv)    The effects of rescission, as described in paragraph (d) of this section.
(v)    The date the rescission period expires.
 *(d) Effects of rescission.*
(1)    When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
(2)    Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction

and shall take any action necessary to reflect the termination of the security interest.

(3)    If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumers tender, the consumer may keep it without further obligation.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are

consistent with 12 C.F.R. § 226.23, but deny the allegations to the extent of any inconsistency.

32.    TILA provides in pertinent part:

12 U.S.C. §1640

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A) (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000;

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are

consistent with 15 U.S.C. § 1640, but deny the allegations to the extent of any inconsistency.

33.    Anna was not provided with any copies of a Notice of Right to Cancel or a Truth In Lending Statement in violation of her TILA rights pursuant to 15 U.S.C. §1635 and Regulation Z, §226.23(b).

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

34.    The failure to provide Anna with proper notice of her right to cancel or a Truth In Lending Disclosure Statement gives rise to an extended right to rescind the subject transaction.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

35.    An election was made by Charlotte, on behalf of Anna, to rescind the subject loan. See Exhibit B.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

36.    Since the time of the election to rescind neither Fremont nor MERS has contacted Charlotte or her counsel concerning the rescission of the loan.

**ANSWER:**    Fremont and MERS never received notice of any purported rescission of the loan at issue by Horton, Richardson and/or their counsel.  Fremont and MERS deny that they had an obligation to contact, and deny that they would have contacted, Charlotte or her counsel about a purported rescission of which they had no notice.

WHEREFORE, Fremont and MERS deny any and all alleged liability to Plaintiff, request that judgment be entered in favor of Fremont and MERS and against Plaintiff, with costs assessed, and request that this Court grant such further and additional relief as it deems just and appropriate.

Count II
Alleged Rescission of Note and Mortgage
(Against Fremont, MERS)

37.    Plaintiff realleges paragraphs 1 to 26 as though they were fully realleged herein.

**ANSWER:**    Fremont and MERS restate and incorporate by reference their answers and responses to Paragraphs 1-26 above as its answer and response to this Paragraph.

38.    At the time that Anna executed the documents provided to her by the loan officer she was diagnosed with dementia.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

39.    Dementia is an acquired loss of cognitive function that affects language, attention, memory, personality and abstract reasoning.

**ANSWER:**    Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

40.    Due to Anna's dementia she was unable to form the requisite state of mind to enter into an agreement with Fremont to borrow any funds.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

41.    Anna is not responsible to pay to either Fremont, MERS, or their successors any amounts that were not received by her, including the amounts that the contractor received and did not use to perform any work on her behalf.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

42.    Anna has already tendered sufficient funds to Fremont to extinguish the amount of debt that she may owe under the subject loan.

**ANSWER:**    Fremont and MERS deny the allegations in this Paragraph.

WHEREFORE, Fremont and MERS deny any and all alleged liability to Plaintiff, request that judgment be entered in favor of Fremont and MERS and against Plaintiff, with costs assessed, and that this Court grant such further and additional relief as it deems just and appropriate.

Count III
Alleged Violation of RESPA's Antikickback Provisions
(Against Fremont and Country Mortgage)

43.    Plaintiff realleges paragraphs 1 to 26 as though they were fully realleged herein.

**ANSWER:**    Fremont and MERS restate and incorporate by reference their answers and responses to Paragraphs 1-26 above as its answer and response to this Paragraph.

44.    Fremont's operations are made profitable through the receipt of fees and interest payments on loans that it originates as well as the selling of its loans on the secondary mortgage market.

**ANSWER:**    Fremont admits that, at one time, its operations were made profitable through the receipt of fees and interest payments on loans that it originated as well as the selling of its loans on the secondary mortgage market.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

11

45.     When selling loans on the secondary market, Fremont is able to command a higher selling price for loans with higher stated interest rates and other terms that are lender friendly.

**ANSWER:**     Fremont admits that, when it used to sell loans on the secondary market, Fremont was able to command a higher selling price for loans with higher stated interest rates and other terms that were lender friendly.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

46.     Fremont originates its loans by associating with mortgage brokers. Fremont provides mortgage brokers with "rate sheets" or similar documents that provide the mortgage broker with information regarding Fremont's loan programs including the interest rates it would charge qualified borrowers called "par rates".

**ANSWER:**     Fremont admits that it used to originate its loans through mortgage brokers, that it used to provide mortgage brokers with "rate sheets" or similar documents that provided the mortgage broker with information regarding Fremont's loan programs including the interest rates it would charge qualified borrowers using terms such as "par rates" or similar terms.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

47.     In an effort to increase its profits through higher interest payments from its borrowers and higher selling prices for the loans it sells, Fremont encourages mortgage brokers to arrange for loans to borrowers with higher than "par rate" interest rates.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

48.     Fremont encourages the mortgage brokers to arrange for these higher than "par rate" loans by offering the mortgage broker a portion of the up charged interest rate called a "yield spread premium." The higher the up charged interest rate the higher the yield spread premium paid to the mortgage broker.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

49.     CMS is a mortgage broker. As a mortgage broker, CMS arranges for loans for its customers by contacting direct lenders, such as Fremont, to originate loans to CMS's customers.

**ANSWER:**     Fremont admits that Country Mortgage at least at one time used to operate, at least in part, as a duly licensed mortgage broker.   Fremont and MERS lack knowledge or information sufficient to admit or deny the remaining allegations in this Paragraph.

50.     CMS makes a profit by charging fees directly to its customers such as loan application fees, underwriting fees, loan origination fees, etc.

**ANSWER:**     Fremont and MERS lack knowledge or information sufficient to admit or deny the allegations in this Paragraph.

51.     CMS also enters into agreements with the direct lenders, including Fremont, whereby CMS accepts yield spread premiums on each loan made and other bonuses such as volume based compensation, which are paid based upon the volume of loans arranged by CMS to the lender during a period of time.

**ANSWER:**     Fremont denies the allegations in this Paragraph.   MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

52.     Aware that no reasonable borrower would agree to pay a higher interest rate, without any benefit in return, CMS does not reveal to its customers that they are paying higher than "par rate" interest rates. CMS does not reveal to its customers that they qualify for lower interest rates. CMS does not reveal that they are being paid a yield spread premium or why they are being paid a yield spread premium.

**ANSWER:**     Fremont denies the allegations in this Paragraph.   MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

53.     Fremont is aware that its mortgage brokers, including CMS, do not reveal the nature or purpose of the yield spread premium that the mortgage broker is receiving and that mortgage brokers, including CMS, induce borrowers to enter into loan agreements with Fremont by using fraud and deceit, including misrepresentations and concealment of material facts regarding the existence, nature, and purpose of the yield spread premium and the increased interest rate the borrower is paying.

**ANSWER:**     Fremont denies the allegations in this Paragraph.   MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

54.     CMS procured a mortgage loan for Anna totaling $150,000.

**ANSWER:**     Fremont admits the allegations in this Paragraph.   MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

55.     CMS was paid a broker fee in the amount of $2,780.00, a processing fee of $495.00, and a yield spread premium in the amount of $2,250.00, a credit report fee of $10.50, and a courier fee of $25.00.

**ANSWER:**     Fremont admits the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

56.     Unbeknownst to Anna, Fremont and CMS had previously entered into the above described scheme whereby CMS would refer uncharged interest rate loan business to Fremont in exchange for Fremont providing CMS with a yield spread premium for such referrals.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

57.     CMS in fact referred the loan application for Anna to Fremont and CMS received a yield spread premium of $2,250.00 from Fremont in addition to the $3,310.50 in loan fees, in connection with the subject transaction.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

58.     As described above, the payment of the yield spread premium is a kickback from Fremont to CMS for the referral of business and also for the agreement to increase the interest rate on the borrower above that which the borrower might otherwise qualify for.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

59.     CMS and Fremont did not disclose that Anna qualified for an interest rate lower than the one she was charged for the subject loans.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

60.     CMS and Fremont did not disclose to Anna that CMS was going to receive additional compensation outside of closing by having Plaintiff agree to pay a higher than necessary interest rate for the loans.

**ANSWER:**     Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

61.    CMS and Fremont did not disclose to Anna that they had entered into a scheme involving the exchange of loan referrals for the payment of yield spread premiums.

**ANSWER:**    Fremont denies the allegations in this Paragraph.    MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

62.    The Department of Housing and Urban Development (HUD) has issued policy statements providing guidelines for compensable services provided by mortgage brokers in connection with the origination of a mortgage loan. Those compensable services include:

(a)    Taking information from the borrower and filling out the application;

(b)    Analyzing the prospective borrower's income and debt and prequalifying the prospective borrower to determine the maximum mortgage that the prospective borrower can afford;

(c)    Educating the prospective borrower in the home buying and financing process, advising the borrower about the different types of loan products available, and demonstrating how closing costs and monthly payments could vary under each product;

(d)    Collecting financial information (tax returns, bank statements) and other related documents that are part of the application process;

(e)    Initiating/ordering VOEs (verifications of employment) and VODs (verifications of deposit);

(f)    Initiating/ordering requests for mortgage and other loan verifications;

(g)    Initiating/ordering appraisals;

(h)    Initiating/ordering inspections or engineering reports;

(i)    Providing disclosures (truth in lending, good faith estimate, others) to the borrower;

(j)    Assisting the borrower in understanding and clearing credit problems;

(k)    Maintaining regular contact with the borrower, realtors, lender, between application and closing to appraise them of the status of the application and gather any additional information as needed;

(l)    Ordering legal documents;

(m)    Determining whether the property was located in a flood zone or ordering such service; and

(n)    Participating in the loan closing.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are

consistent with HUD's policy statements, but deny the allegations to the extent of any

inconsistency.

63.    In connection with Anna's loan CMS did not perform any of the HUD recognized services, other than the loan officer participated in the closing.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

64.    To the extent that CMS provided any compensable service, the market value for those services were not worth in excess of $5,560.50, which CMS received in connection with Anna's loan.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

65.    The amount of total compensation paid to CMS did not reasonably relate to the value of the services provided by CMS and is in excess of what other mortgage brokers in a similar transaction would be paid.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

66.    The Real Estate Settlement Practices Act provides in pertinent part:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. 12 U.S.C. 2607(a).

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are consistent with 12 U.S.C. § 2607(a), but deny the allegations to the extent of any inconsistency.

67.    Fremont agreed to pay and CMS agreed to accept a fee that was in excess of any amount CMS reasonably should receive for its services.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

68.    The amount Fremont paid was to compensate CMS for referring the loan.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

69.    Such a payment is in violation of RESPA's bar against referral fees.

**ANSWER:**    Fremont denies the allegations in this Paragraph.   MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

70.    Section 2607(d)(2) of RESPA reads in pertinent part:

Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are consistent with 12 U.S.C. § 2607(d)(2), but deny the allegations to the extent of any inconsistency.

71.    In addition Section 2607(d)(5) of RESPA allows a successful plaintiff the recovery of their reasonable attorney's fees and litigation costs.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are consistent with 12 U.S.C. § 2607(d)(5), but deny the allegations to the extent of any inconsistency.

WHEREFORE, Fremont and MERS deny any and all alleged liability to Plaintiff, request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5), and that this Court grant such further and additional relief as it deems just and appropriate.

Count IV
Alleged Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
(Against Fremont and Country Mortgage)

72.    Plaintiff realleges paragraphs 1 to 26 and 44 - 65 as though they were fully realleged herein.

**ANSWER:**    Fremont and MERS restate and incorporate by reference their answers and responses to Paragraphs 1-26 and 44-65 above as its answer and response to this Paragraph.

73.    The Illinois Consumer Fraud and Deceptive Business Practices Act reads in

pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

**ANSWER:**    Fremont and MERS admit the allegations in this Paragraph to the extent they are

consistent with 815 ILCS 505/2, but deny the allegations to the extent of any inconsistency.

74.    CMS:

a)  misrepresented to Anna the amounts of fees they would be charged in connection with the loans;
b)  failed to disclose to Anna that it had entered into a scheme with Fremont, whereby CMS would obtain additional compensation for referring loan business to Fremont;
c)  failed to disclose to Anna that they were paying a higher than market rate interest rate on the loans;
d)  failed to disclose to Anna that it was going to obtain a higher profit from the loans due to the increased interest rate; and
e)  charged a fee in connection with the loans well in excess of the reasonable market rate for the services they provided.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

75.    Fremont:

a)  entered into a scheme with CMS to refer Anna' loan;
b)  paid CMS a kickback in exchange for its loan referral;
c)  failed to disclose to Anna its participation in the scheme; and,
d)  failed to disclose to Anna that they qualified for a lower interest rate.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

76.    CMS and Fremont's conduct was unfair and deceptive to Anna and used in the course of their trade as a mortgage broker and lender.

**ANSWER:**    Fremont denies the allegations in this Paragraph.  MERS lacks knowledge or

information sufficient to admit or deny the allegations in this Paragraph.

77.    CMS and Fremont acted with the intent that Anna rely upon their conduct in executing documents at the October 24, 2005 closing.

**ANSWER:**    Fremont denies the allegations in this Paragraph.    MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

78.    CMS and Fremont's practices have caused Anna substantial damages including the higher interest payments on the subject loans than would otherwise be required.

**ANSWER:**    Fremont denies the allegations in this Paragraph.    MERS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

WHEREFORE, Fremont and MERS deny any and all alleged liability to Plaintiff, request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### AFFIRMATIVE DEFENSES

Fremont and MERS state the following for their Affirmative Defenses:

1.    In October of 2005, Fremont extended a loan to Richardson (the "Subject Loan"), which is secured by a mortgage on the real estate commonly known as 1647 S. Central Park Avenue in Chicago, Illinois (the "Subject Property").

2.    At the time the Subject Loan was extended, there were then-existing valid mortgage liens on the Subject Property in favor of Neighborhood Housing Services and Chase.

3.    The proceeds of the Subject Loan were used to payoff the then-existing mortgage liens on the Subject Property.  Specifically, $10,902.90 of the proceeds of the Subject Loan were used to pay off the Neighborhood Housing Services obligation, and $24,738.24 of the proceeds of the Subject Loan were used to pay off the Chase obligation.

4.    Richardson received all of the disclosures required under TILA, including two copies of her Notice of Right to Cancel and one copy of her Federal Truth In Lending Disclosure Statements, in a timely fashion in connection with the Subject Loan.

5.    In particular, in October of 2005, Richardson received two copies of her Notices of Right to Cancel.

6.    Despite having received the October 2005 Notices of Right to Cancel, Richardson failed to cancel the Subject Loan within the 3-day period allowed under TILA.

7.    Instead, Richardson and/or Horton caused numerous payments to be made toward the amounts due on the Subject Loan with knowledge of the matters they now allege in their Complaint.

8.    Richardson signed various disclosures explaining the terms of her loan and the compensation to the various parties, including all of the disclosures required under TILA, at closing, each time representing and acknowledging having received the correct number of copies of the disclosures.

**First Affirmative Defense**

9.    Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

10.    Richardson's purported claim under RESPA is barred by the statute of limitations.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5) and/or 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

**Second Affirmative Defense**

11.     Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

12.     Richardson's attempt to now cancel and rescind the Subject Loan under TILA is untimely.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### Third Affirmative Defense

13.     Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

14.     Fremont reasonably relied on Richardson's representation and acknowledgement that she had received the correct number of TILA and other loan disclosures.

15.     Plaintiff is now estopped from denying her receipt of the disclosures.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### Fourth Affirmative Defense

16.     Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

17.     Plaintiff's purported claims are barred by waiver and/or the voluntary payment doctrine.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5) and/or 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### Fifth Affirmative Defense

18.    Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

19.    Any alleged error would have been unintentional, such that Plaintiffs' allegations are barred and/or limited in whole or in part by the bona fide error defense under 15 U.S.C. § 1640(c) and/or 12 U.S.C. § 2607(d)(3).

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5) and/or 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### Sixth Affirmative Defense

20.    Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

21.    Plaintiff's claims are barred and/or limited in whole or in part by the terms of the documents evidencing the Subject Loan, the parol evidence rule, and/or the statute of frauds.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5) and/or 815 ILCS 505/10a(c), and that this Court grant such further and additional relief as it deems just and appropriate.

### Seventh Affirmative Defense

22.     Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-6 above.

23.     To the extent Plaintiff suffered any alleged damages, the existence of which are expressly denied, the alleged damages are barred and/or limited in whole or in part by Plaintiff's failure to mitigate the alleged damages, the alleged damages were caused in whole or in part by Plaintiff's own acts or omissions, and/or the alleged damages were caused in whole or in part by individuals and/or entities over whom Fremont and MERS had no control, right of control or responsibility.

WHEREFORE, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, plus costs and reasonable attorneys fees pursuant to 12 U.S.C. § 2607(d)(5) and/or 815 ILCS 505/10a(c), and that this Court grant such further and additional relief, as it deems just and appropriate.

### Eighth Affirmative Defense

24.     Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-8 above.

25.     Fremont and MERS deny that Plaintiff is entitled to now cancel or rescind the Subject Loan, deny that they are liable to Plaintiff under TILA, and deny any alleged wrongdoing whatsoever.

26.     Nevertheless, to the extent Plaintiff might seek and to the extent this Court may allow rescission, the rescission process should be modified pursuant to 15 U.S.C. § 1635(b), to ensure the required tender by Plaintiff prior to the release of the mortgage securing the Subject

Loan.

WHEREFORE, to the extent Plaintiff may now be entitled to rescission under TILA, Fremont and MERS request that this Court:

      a.     Require Plaintiff to provide reasonable assurances that the non-rescindable balance of the Subject Loan will be repaid;

      b.     Order that the mortgage securing the Subject Loan shall be released only upon payment of the non-rescindable balance; and,

      c.     Provide such further and additional relief as this Court deems just and appropriate.

### Ninth Affirmative Defense

27.    Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-3 above.

28.    Having used the proceeds of the Subject Loan to pay off the mortgage liens of Neighborhood Housing Services and Chase, Fremont and MERS are subrogated to and step into the shoes of those liens to the extent of the original amounts of the liens.

WHEREFORE, to the extent that Plaintiff might somehow invalidate the Subject Loan and/or related mortgage, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, such that Fremont and MERS are subrogated to and step into the shoes of the Neighborhood Housing Services and the Chase mortgage liens, with costs assessed, and that this Court grant such further and additional relief, as it deems just and appropriate.

### Tenth Affirmative Defense

29.    Fremont and MERS restate and incorporate by reference the facts described in Paragraphs 1-3 above.

30.    It would be unjust for Plaintiff to retain the benefit of the payoffs of the

Neighborhood Housing Services and Chase mortgage liens without reimbursing Fremont for such benefit.

WHEREFORE, to the extent that Plaintiff might somehow invalidate the Subject Loan and/or related mortgage, Fremont and MERS request that judgment be entered in favor of Fremont and MERS and against Plaintiff, such that Fremont and MERS are provided with equitable liens equivalent to the Neighborhood Housing Services and Chase mortgage liens, with costs assessed, and that this Court grant such further and additional relief, as it deems just and appropriate.

The above affirmative defenses are based on the facts currently known to Fremont and MERS. Fremont and MERS reserve the right to amend or add affirmative defenses based on facts that may later be discovered, pled, or offered.

## FREMONT'S CROSS CLAIM AGAINST CMS

Defendant Fremont Investment & Loan ("Fremont"), by its attorneys, complains of Defendant Country Mortgage Services, Inc. ("CMS") as follows:

### Introduction

1.    Fremont cross claims against CMS for indemnification and other relief in connection with Plaintiff Charlotte Horton, as guardian of the estate of Anna R. Richardson's (the "Plaintiff") allegations against Fremont.

### Jurisdiction and Venue

2.    Fremont is a California industrial bank that does business in the State of Illinois and in this district as a duly licensed mortgage loan servicer, and used to extend residential and

commercial mortgage loans secured by real estate located in the State of Illinois and in this district.

3.     CMS is an Illinois corporation that is or was at all relevant times engaged in the business of arranging mortgage loans in the State of Illinois and in this district as a duly authorized and licensed mortgage broker.

4.     Plaintiff sues Fremont in this action for, among other things, alleged violations of the federal Truth In Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA"), and the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA").

5.     This court has subject matter jurisdiction over the matters described in this pleading pursuant to 28 U.S.C. § 1367, as the claims asserted here are so related to the claims in the Plaintiff's Complaint that they form part of the same case or controversy.

6.     All or a substantial part of the events or omissions giving rise to the claims asserted in this pleading occurred in this district.

## Facts

7.     Prior to October of 2005, Fremont began doing business with CMS when the parties entered into a wholesale brokerage agreement (the "Broker Agreement").  A true and correct copy of the Broker Agreement is attached as Exhibit A.

8.     Among other terms and conditions in the Broker Agreement, CMS is required to indemnify Fremont for any and all losses in connection with any breach by CMS of any representation, warranty or obligation of CMS contained in the Broker Agreement, including but not limited to those relating to any violations of law by CMS.

9.     In October of 2005, and pursuant to the Broker Agreement, Fremont extended a loan to Anna R. Richardson ("Richardson") that was brokered by CMS and that is secured by a

mortgage on real estate located in Chicago, Illinois (the "Subject Loan").

10.     CMS functioned and performed services as Richardson's mortgage broker in connection with the Subject Loan pursuant to the Broker Agreement, and submitted all of the loan application information and related documentation for the Subject Loan to Fremont pursuant to the Broker Agreement.

11.     The Plaintiff claims that CMS supposedly violated the anti-kickback provisions under RESPA, and that CMS failed to disclose to her the nature and amount of its mortgage broker compensation in supposed violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA").

12.     Fremont never had direct contact with the Plaintiff at or prior to closing of the Subject Loan.  CMS never informed or advised Fremont that Richardson suffered or may have suffered from any mental illness, as Plaintiff now alleges.

13.     The alleged acts and omissions of CMS have subjected Fremont to potential liability to the Plaintiff, and have potentially affected the validity and enforceability of the Subject Loan and the mortgage lien securing the Subject Loan, thereby causing significant losses to Fremont.

### COUNT I – BREACH OF CONTRACT AGAINST CMS

14.     Fremont re-states and incorporates by reference the facts set forth in Paragraphs 1-13 above.

15.     Prior to the closing of the Subject Loan, Fremont offered to enter into the Broker Agreement with CMS.

16.     Prior to the closing of the Subject Loan, CMS accepted Fremont's offer.

17.     Pursuant to Paragraph 12 of the Broker Agreement, CMS was required to comply

with all state and federal laws, rules and regulations which apply to it because of its activities as a mortgage broker for its loan application clients, including without limitation TILA, RESPA and ICFA.

18.     Pursuant to Subparagraph 13(i) of the Broker Agreement, CMS represented and warranted to Fremont that "[e]ach Loan Application Package was taken and processed by Broker, and any compensation due Broker is in compliance with all applicable federal, state, and local laws, rules and regulations, including but not limited to state usury laws, state licensing laws, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act."

19.     Pursuant to Subparagraph 13(j) of the Broker Agreement, CMS represented and warranted to Fremont that "[t]o the best of Broker's knowledge, after due inquiry, there does not exist any circumstance or condition with respect to the Loan Application Package, the property to be encumbered, the loan applicant, or the loan applicant's credit standing which:  (i) can be reasonably expected to cause institutional or private investors to regard the Loan as unacceptable for investment purposes,  (ii) may cause the Loan to become delinquent, or  (iii) may adversely affect the value or marketability of the Loan."

20.     Pursuant to Subparagraph 13(k) of the Broker Agreement, CMS represented and warranted to Fremont that "[t]o the best of Broker's knowledge, after due inquiry, each Loan Application Package submitted by Broker to Lender is true and correct in all material respects and does not fail to include any information required to be stated or necessary to make each such Loan Application Package not misleading."

21.     According to Plaintiff's allegations, CMS breached various of its representations, warranties and obligations contained the Broker Agreement.

22.    Fremont accepted the application for the Subject Loan, funded the Subject Loan, caused CMS to be paid for its services, and otherwise performed all conditions on its part to be performed under the Broker Agreement, as to the Subject Loan and otherwise.

23.    As a direct and proximate result of CMS's alleged breaches of the Broker Agreement, Fremont has incurred damages in that it was compelled to defend this action and may incur additional damages as a result of CMS's alleged conduct.

24.    Fremont seeks the remedies provided for under Paragraphs 15 and 16 of the Broker Agreement.

25.    Fremont wishes to litigate the issues pertaining solely to Plaintiff's allegations and the Subject Loan in this forum.  Accordingly, Fremont waives its right to demand arbitration pursuant to Paragraph 22 of the Broker Agreement solely as to CMS and solely for purposes of the Subject Loan.  Fremont does not waive its right to arbitration as to any other mortgage loan, or as to any other mortgage broker.

WHEREFORE, Fremont requests that this Court enter judgment in its favor and against CMS, requiring CMS to perform in accordance with the Broker Agreement by indemnifying Fremont and by repurchasing the Subject Loan, with reasonable attorneys fees, expenses and costs assessed, and that this Court provide such further and additional relief as it deems just and appropriate.

Dated: February 1, 2008                    Respectfully submitted,

                                           **FREMONT INVESTMENT & LOAN,** and
                                           **MORTGAGE LECTRONIC REGISTRATION
                                           SYSTEMS, INC.**

Ralph T. Wutscher                          Defendants,
ROBERTS WUTSCHER, LLP.
10 S. LaSalle Street, Suite 3500
Chicago, Illinois  60603
Tel.  (312) 551-9320        By:        /s/  Ralph T. Wutscher
Fax  (866) 581-9302                    One of Their Attorneys


*Solely as to the defense of MERS and Fremont with regard
to the allegations of Count II and with regard to
Affirmative Defenses 9 and 10*:

J. Michael Williams
Amy E. Bullock
COHON RAIZES & REGAL LLP
208 S. LaSalle Street, Suite 1860
Chicago, Illinois  60604
Tel.  (312) 726-2252        By:        /s/  J. Michael Williams
Fax  (312) 726-0609                    One of Their Attorneys


## Certificate of Service

I, Ralph T. Wutscher, an attorney, hereby certify that on **February 1, 2008**, service of a true and correct copy of this document and any referenced exhibits was accomplished pursuant to ECF on all parties who are Filing Users.


                        /s/  Ralph T. Wutscher