IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLOTTE HORTON, as guardian of the Estate of Anna R. Richardson, Adjudicated Disabled Person<br><br>      Plaintiff,<br>  v.<br><br>COUNTRY MORTGAGE SERVICES, INC., FREMONT INVESTMENT & LOAN, and MORTGAGE ELECTRONIC<br>  REGISTRATION SYSTEMS, INC.,<br><br>      Defendants. | No. 2007 C 6530<br><br>Hon. George W. Lindberg |

**ABSOLUTE TITLE SERVICES, INC.'S
ANSWER AND AFFIRMATIVE DEFENSES TO
<u>FREMONT INVESTMENT & LOAN'S THIRD-PARTY COMPLAINT</u>**

Absolute Title Services, Inc. ("ATS"), by its attorneys, Ward and Metti, PC, for its answer and affirmative defenses to Fremont Investment & Loan's ("Fremont") third-party complaint, states as follows.

<u>Introduction</u>

1. Fremont sues CMS and ATSI for indemnification and contribution in connection with Plaintiff Charlotte Horton, as guardian of the estate of Anna R. Richardson's (the "Plaintiff") allegations against Fremont.

<u>ANSWER:</u> ATS denies that Fremont has sued it for indemnification and contribution. Rather, Fremont has sued ATS for common-law breach of contract and breach of fiduciary duty.

<u>Jurisdiction and Venue</u>

2. Fremont is a California industrial bank that does business in the State of Illinois and in this district as a duly licensed mortgage loan servicer, and used to extend residential

and commercial mortgage loans secured by real estate located in the State of Illinois and in this district.

**ANSWER:** ATS admits that Fremont extended a residential mortgage loan secured by the real estate located at 1647 South Central Park Avenue, Chicago, Illinois. ATS lacks knowledge or information sufficient to admit or deny the remainder of the allegations in this Paragraph.

3. CMS is an Illinois corporation that is or was at all relevant times engaged in the business of arranging mortgage loans in the State of Illinois and in this district as a duly authorized and licensed mortgage broker.

**ANSWER:** Admitted.

4. ATSI is an Illinois corporation that is engaged at least in part in the business of issuing title insurance policies, and providing other settlement services to lenders in the State of Illinois and in this district.

**ANSWER:** Admitted.

5. Plaintiff sues Fremont in this action for, among other things, alleged violations of the federal Truth In Lending Act, 15 U.S.C. § 1601, et seq. ("TILA"), and the federal Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, et seq. ("RESPA"). A copy of Plaintiff's Complaint is attached as Exhibit A.

**ANSWER:** Admitted.

6. This court has subject matter jurisdiction over the matters described in this pleading pursuant to 28 U.S.C. § 1367, as the claims asserted here are so related to the claims in the Plaintiff's Complaint that they form part of the same case or controversy.

**ANSWER:** ATS does not challenge this court's subject matter jurisdiction.

7. All or a substantial part of the events or omissions giving rise to the claims asserted in this pleading occurred in this district.

**ANSWER:** Admitted.

**Facts**

8.  Prior to October of 2005, Fremont began doing business with CMS when the parties entered into a wholesale brokerage agreement (the "Broker Agreement"). A true and correct copy of the Broker Agreement is attached as Exhibit B.

**ANSWER:**  ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

9.  Among other terms and conditions in the Broker Agreement, CMS is required to indemnify Fremont for any and all losses in connection with any breach by CMS of any representation, warranty or obligation of CMS contained in the Broker Agreement, including but not limited to those relating to any violations of law by CMS.

**ANSWER:**  ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

10.  In October of 2005, and pursuant to the Broker Agreement, Fremont extended a loan to Anna R. Richardson ("Richardson") that was brokered by CMS and that is secured by a mortgage on real estate located in Chicago, Illinois (the "Subject Loan").

**ANSWER:**  Admitted.

11.  CMS functioned and performed services as Richardson's mortgage broker in connection with the Subject Loan pursuant to the Broker Agreement, and submitted all of the loan application information and related documentation for the Subject Loan to Fremont pursuant to the Broker Agreement.

**ANSWER:**  ATS admits that CMS performed services as a mortgage broker for the Subject Loan. ATS lacks knowledge or information sufficient to admit or deny the remainder of the allegations in this Paragraph.

12.  The Plaintiff claims that CMS supposedly violated the anti-kickback provisions under RESPA, and that CMS failed to disclose to her the nature and amount of its mortgage broker compensation in supposed violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. ("ICFA").

**ANSWER:** ATS admits only that Plaintiff makes these claims in her complaint. ATS denies that it committed any such violations.

13.     Fremont never had direct contact with the Plaintiff at or prior to closing. CMS never informed or advised Fremont that Richardson suffered or may have suffered from any mental illness, as Plaintiff now alleges.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

14.     The alleged acts and omissions of CMS have subjected Fremont to potential liability to the Plaintiff, and have potentially affected the validity and enforceability of the mortgage lien securing the Subject Loan, thereby causing significant losses to Fremont.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

15.     Richardson received all of the disclosures required under TILA, including two copies of her Notices of Right to Cancel and one copy of her Federal Truth In Lending Disclosure Statements, in a timely fashion in connection with the Subject Loan. Despite having received her TILA disclosures, Richardson failed to cancel the Subject Loan within the 3-day period allowed under TILA.

**ANSWER:** Admitted.

16.     However, in her Complaint, the Plaintiff alleges that Richardson was not given the proper disclosures required under TILA at the closing of the Subject Loan. The Plaintiff claims that this conduct violated TILA, and seeks to cancel and rescind the Subject Loan, and obtain statutory damages, attorney's fees and other amounts from Fremont.

**ANSWER:** ATS admits only that Plaintiff makes these claims in her complaint. ATS denies that it committed any such violations.

17.     ATSI functioned as Fremont's closing and escrow agent with respect to the Subject Loan. The Plaintiff's allegations could only have merit if ATSI failed to follow Fremont's instructions relating to the closing of the Subject Loan.

**ANSWER:** ATS admits the first sentence of Paragraph 17. ATS denies that it committed any alleged violations.

18. Fremont instructed and required ATSI to deliver the disclosures required under TILA to Richardson at the closing of the Subject Loan. A copy of Fremont's closing instructions to ATSI is attached as Exhibit C.

**ANSWER:** Admitted.

19. ATSI agreed and consented to perform its services in accordance with Fremont's closing instructions.

**ANSWER:** ATS admits that it represented to Fremont that the Subject Loan was closed and disbursed in strict accordance with Fremont's instructions.

20. Fremont never provided ATSI with approval of any modification of these terms, and never authorized ATSI to disregard, Fremont's closing instructions requiring ATSI to deliver the disclosures required under TILA to Richardson at the closing of the Subject Loan.

**ANSWER:** Admitted.

21. According to the Plaintiff's allegations, ATSI failed to comply with Fremont's written closing instructions in connection with the closing of the Subject Loan.

**ANSWER:** ATS admits only that Plaintiff makes these claims in her complaint. ATS denies that it committed any such violations.

22. In addition, ATSI never informed or advised Fremont that Richardson suffered or may have suffered from any mental illness, as Plaintiff now alleges.

**ANSWER:** ATS admits that it did not inform Fremont that Richardson suffered or may have suffered from any mental illness. Answering further, ATS denies it had any obligation to do so. In addition, ATS asserts that Richardson did not disclose to ATS that she suffered from any mental illness, and, in the absence of any such notice from Richardson, ATS asserts that the rendering of an opinion that Richardson suffered from mental illness

5

would constitute the unauthorized practice of medicine, and would constitute a duty beyond what ATS would have been willing to undertake for the $175.00 closing fee paid to it to close the Subject Loan. Fremont knew the age of its borrower. If Fremont wanted a medical opinion concerning Ms. Richardson's mental capacity at the closing, Fremont should have obtained one.

23. ATSI's alleged acts and omissions have subjected Fremont to potential liability to the Plaintiff, and have potentially affected the validity and enforceability of the mortgage lien securing the Subject Loan, thereby causing significant losses to Fremont.

**ANSWER:** Denied.

## COUNT I – BREACH OF CONTRACT AGAINST CMS

24. Fremont re-states and incorporates by reference the facts set forth in Paragraphs 1-23 above.

**ANSWER:** ATS incorporates its answers to paragraphs one through 23 above as its answer to paragraph 24.

25. Prior to the closing of the Subject Loan, Fremont offered to enter into the Broker Agreement with CMS.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

26. Prior to the closing of the Subject Loan, CMS accepted Fremont's offer.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

27. Pursuant to Paragraph 12 of the Broker Agreement, CMS was required to comply with all state and federal laws, rules and regulations which apply to it because of its activities as a mortgage broker for its loan application clients, including without limitation TILA, RESPA and ICFA.

6

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

28. Pursuant to Subparagraph 13(i) of the Broker Agreement, CMS represented and warranted to Fremont that "[e]ach Loan Application Package was taken and processed by Broker, and any compensation due Broker is in compliance with all applicable federal, state, and local laws, rules and regulations, including but not limited to state usury laws, state licensing laws, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Truth in Lending Act, and the Real Estate Settlement Procedures Act."

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

29. Pursuant to Subparagraph 13(j) of the Broker Agreement, CMS represented and warranted to Fremont that "[t]o the best of Broker's knowledge, after due inquiry, there does not exist any circumstance or condition with respect to the Loan Application Package, the property to be encumbered, the loan applicant, or the loan applicant's credit standing which: (i) can be reasonably expected to cause institutional or private investors to regard the Loan as unacceptable for investment purposes, (ii) may cause the Loan to become delinquent, or (iii) may adversely affect the value or marketability of the Loan."

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

30. Pursuant to Subparagraph 13(k) of the Broker Agreement, CMS represented and warranted to Fremont that "[t]o the best of Broker's knowledge, after due inquiry, each Loan Application Package submitted by Broker to Lender is true and correct in all material respects and does not fail to include any information required to be stated or necessary to make each such Loan Application Package not misleading."

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

31. According to Plaintiff's allegations, CMS breached various of its representations, warranties and obligations contained the Broker Agreement.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

32. Fremont accepted the application for the Subject Loan, funded the Subject Loan, caused CMS to be paid for its services, and otherwise performed all conditions on its part to be performed under the Broker Agreement, as to the Subject Loan and otherwise.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

33. As a direct and proximate result of CMS's alleged breaches of the Broker Agreement, Fremont has incurred damages in that it was compelled to defend this action and may incur additional damages as a result of CMS's alleged conduct.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

34. Fremont seeks the remedies provided for under Paragraphs 15 and 16 of the Broker Agreement.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

35. Fremont wishes to litigate the issues pertaining solely to Plaintiff's allegations and the Subject Loan in this forum. Accordingly, Fremont waives its right to demand arbitration pursuant to Paragraph 22 of the Broker Agreement solely as to CMS and solely for purposes of the Subject Loan. Fremont does not waive its right to arbitration as to any other mortgage loan, or as to any other mortgage broker.

**ANSWER:** ATS lacks knowledge or information sufficient to admit or deny the allegations in this Paragraph.

**WHEREFORE**, Absolute Title Services, Inc. requests that this Court enter judgment in its favor and against Fremont Investment & Loan, with reasonable attorneys fees, expenses and costs assessed, and that this Court provide such further and additional relief as it deems just and appropriate.

## COUNT II – BREACH OF CONTRACT AGAINST ATSI

36. Fremont re-states and incorporates by reference the facts set forth in Paragraphs 1-23 above.

**ANSWER:** ATS incorporates its answers to paragraphs one through 23 above as its answer to paragraph 36.

37. Prior to the closing of the Subject Loan, Fremont offered to pay ATSI to perform closing services in accordance with its closing instructions.

**ANSWER:** ATS denies the allegations in this Paragraph. Answering further, ATS states that its closing fee was paid from borrower's funds pursuant to an agreement between Fremont and Richardson.

38. Prior to the closing of the Subject Loan, ATSI accepted Fremont's offer.

**ANSWER:** Denied.

39. ATSI performed closing services in connection with the Subject Loan for Fremont pursuant to Fremont's closing instructions in exchange for payment.

**ANSWER:** Admitted.

40. Fremont caused ATSI to be paid for its closing services, and performed all other obligations on its part to be performed.

**ANSWER:** ATS admits the Fremont caused it to be paid for closing services. Answering further, ATS states that Fremont, by and through its broker CMS, was in a position to know Richardson's mental capacity and of her alleged mental illness. ATS states that Fremont was under a duty to know its borrow's suitability for the Subject Loan and denies that Fremont told ATS anything about its borrower's mental condition. To the contrary, Fremont instructed ATS to close the subject loan.

41. Contrary to Fremont's closing instructions, ATSI allegedly failed to deliver the disclosures required under TILA to Richardson at the closing of the Subject Loan.

**ANSWER:** Denied.

42. As a direct and proximate result of ATSI's alleged breach of Fremont's closing instructions, Fremont suffered and continues to suffer damages and losses.

**ANSWER:** Denied.

43. ATSI is liable to Fremont for damages in the form of the amounts that may be required to be paid in order to effectuate the Plaintiff's requested rescission of the Subject Loan pursuant to TILA, the damages and other amounts claimed by the Plaintiff under TILA, the attorneys fees that may be awarded to the Plaintiff under TILA, Fremont's attorneys fees related to the defense of this action and related costs, and other damages incurred by Fremont as a direct and proximate result of ATSI's alleged breach of its agreement with Fremont.

**ANSWER:** Denied.

**WHEREFORE**, Absolute Title Services, Inc. requests that this Court enter judgment in its favor and against Fremont Investment & Loan, with reasonable attorneys fees, expenses and costs assessed, and that this Court provide such further and additional relief as it deems just and appropriate.

## COUNT III – BREACH OF FIDUCIARY DUTY

44. Fremont re-states and incorporates by reference the facts set forth in Paragraphs 1-23 above.

**ANSWER:** ATS incorporates its answers to paragraphs one through 23 above as its answer to paragraph 44.

45. ATSI functioned as Fremont's closing and escrow agent with respect to the Subject Loan.

**ANSWER:** Admitted.

10

46. Fremont placed its trust and confidence in ATSI to follow Fremont's written instructions regarding the closing of the Subject Loan and the disbursement of the proceeds of that loan.

**ANSWER:** Admitted.

47. Fremont had the right to control, and attempted to control, ATSI's closing of the Subject Loan and the disbursement of the proceeds of that loan.

**ANSWER:** Admitted.

48. As such, ATSI owed a fiduciary duty to Fremont to act in Fremont's best interest with regard to the closing of the Subject Loan and the disbursement of the proceeds of that loan by, at a minimum, following Fremont's instructions.

**ANSWER:** ATS admits only that it served as Fremont's loan closing agent for the Subject Loan and owed Fremont only the duties undertaken pursuant to the lender's closing instructions.

49. ATSI allegedly breached its fiduciary duty to Fremont by supposedly failing to deliver the disclosures required under TILA to Richardson at the closing of the Subject Loan, and by failing to inform or advise Fremont that Richardson suffered or may have suffered from any mental illness, as Plaintiff now alleges.

**ANSWER:** Denied.

50. Fremont provided clear instructions to ATSI, which were completely proper and consistent with Fremont's alleged obligations under TILA.

**ANSWER:** ATS admits only that Fremont provided its loan closing instructions to ATS which instructions ATS fully performed.

51. The Plaintiff would have no claim for violation of TILA against Fremont if ATSI had not allegedly breached its fiduciary duty to Fremont by allegedly failing to follow Fremont's instructions.

**ANSWER:** ATS denies that Plaintiff has any proper claim against Fremont arising out of any conduct of ATS performed in connection with the Subject Loan.

11

52. As a proximate cause of ATSI's alleged breach of fiduciary duty to Fremont, Fremont suffered damages and losses.

**ANSWER:** Denied.

53. ATSI must indemnify and reimburse Fremont for its damages and losses in connection with the Plaintiff's allegations.

**ANSWER:** Denied.

54. ATSI is liable for damages in the form of the amounts that may be required to be paid in order to effectuate the Plaintiff's requested rescission of the Subject Loan pursuant to TILA, the damages and other amounts claimed by the Plaintiffs under TILA, the attorneys fees that may be awarded to the Plaintiff under TILA, Fremont's attorneys fees related to the defense of this action and related costs, and other damages incurred by Fremont as a direct and proximate result of ATSI's alleged breach of its duty to Fremont.

**ANSWER:** Denied.

**WHEREFORE**, Absolute Title Services, Inc. requests that this Court enter judgment in its favor and against Fremont Investment & Loan, with reasonable attorneys fees, expenses and costs assessed, and that this Court provide such further and additional relief as it deems just and appropriate.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**. Third-Party Plaintiff Fremont Investment & Loan has failed to state a claim for which relief can be granted.

**Second Affirmative Defense.** Fremont alleges in paragraph one of its third-party complaint:

> 1. Fremont sues CMS and ATSI for indemnification and contribution in connection with Plaintiff Charlotte Horton, as guardian of the estate of Anna R. Richardson's (the "Plaintiff") allegations against Fremont. TILA provides no right to indemnification or contribution.

12

While Rule 14 provides a procedural mechanism for the assertion of a claim for contribution or indemnity, there must also be a substantive basis for a Third-Party Defendant's liability. As it relates to Fremont's claims, there is not right to contribution or indemnification for its alleged violation of the Truth-In-Lending Act ("TILA"). A defendant held liable under a federal statute (in this case Fremont) has a right of indemnification or contribution from another entity only through the affirmative creation of a right of action by Congress or if allowed under Federal common law. Congress has chosen to make TILA's disclosure obligations and related duties applicable to creditors only. 15 USC §1602(f); 12 CFR §226.2(a)(17)(i) (2002). ATS is not a creditor as defined within TILA or Regulation Z. Thus, ATS cannot be liable under TILA. Further, TILA, which is the basis for the guardian's underlying complaint provides no specific right to indemnification or contribution as Congress did not create the right to indemnification or contribution within TILA. Nor is there a federal common law right to indemnification or contribution. In the absence of a recognized right to indemnification or contribution for TILA violations, such an action is barred.

**Third Affirmative Defense**. Third-Party Plaintiff's claim against ATS must fail since it was the alleged conduct of Third-Party Plaintiff's own agent, Country Mortgage Services, Inc. ("CMS"), that caused the alleged loss. According to Third-Party Plaintiff, it was CMS that: (1) met with Ms. Richardson and took her loan application; (2) caused the Subject Loan to be closed by ATS; and (3) picked up the loan proceeds checks and caused them to be delivered to J&D Home Services and Ms. Richardson. Through its agent, Third-

Party Plaintiff knew or should have known that Ms. Richardson was not a suitable borrower. At no time did Third-Party Plaintiff revoke CMS' actual or apparent authority.

**Fourth Affirmative Defense**. Plaintiff's claims against Fremont Investment & Loan should be estopped or barred by Plaintiff's own conduct and the doctrines of unclean hands and in pari delicto (an equally culpable party). Plaintiff Horton knew Ms. Richardson's mental condition prior to the Subject Closing and was in a position to cause her power of attorney to be recorded so as to give record notice to good faith lenders. Further, Plaintiff Horton was in a position prior to the Subject Closing to ask the Cook County Circuit Court to appoint Horton as Ms Richardson's legal guardian but failed to do so. Plaintiff inappropriately asks this court to open its doors to her for own omissions to act, which omissions were the sole reasons for the Fremont loan to actually close.

**Fifth Affirmative Defense**. Plaintiff Horton has failed to plead that she has mitigated her damages which she seeks in this cause. Plaintiff Horton: (1) failed to cause lenders to be notified of power of attorney; (2) failed to cause a guardian to be appointed when she knew of Ms. Richardson's alleged mental illness; (3) allowed J&D Home Services to begin work without a written contract; (4) never asked ATS to stop payment on the check to J&D; (5) allowed J&D to perform work without a construction escrow; and (6) and waited approximately two years to seek statutory relief.

**Sixth Affirmative Defense**. Plaintiff Horton's claims are barred, in whole or in part, by the applicable statutes of limitation.

**Seventh Affirmative Defense**. The loan about which Plaintiff Horton complains was either: (1) for a business or commercial purpose; or (2) not for the borrower's dwelling.

14

**Eighth Affirmative Defense**. ATS owed no fiduciary duty to Plaintiff Horton or to Ms. Richardson in connection with the Subject Loan since ATS was the agent of the lender. In the absence of a <u>written instrument</u> that, by its terms, created a legal obligation and that was deposited by the grantor with a third party to be kept until the performance of a condition or happening of an event, there can be no escrow duty assumed by ATS. 17 Illinois Law & Practice, Escrows §1. <u>See</u> <u>also</u> <u>Albrecht v. Brais</u>, 324 Ill. App. 3d 188, 191, 754 N.E.2d 396, 399 (3d Dist. 2001)(an escrow is defined as a written instrument that, by its terms, imports a legal obligation); <u>In re: Handy Andy Home Improvement Centers, Inc.</u>, 196 B.R. 87, 92 (N.D. Ill. 1996)(an escrow is a written instrument which defines the parties' obligations), <u>aff'd.</u>, 222 B.R. 149 (N.D. Ill. 1997), <u>aff'd.</u>, 144 F.3d 1125 (7th Cir. 1998); <u>Toro Petroleum Corporation v. Newell</u>, 33 Ill. App. 3d 223, 228, 338 N.E.2d 491, 495 (2d Dist. 1975)(an escrowee owes a fiduciary duty to act only according to the terms of written escrow instructions).

ATS expressly reserves it right to supplement these affirmative defenses based upon information it acquires in discovery.

          ABSOLUTE TITLE SERVICE, INC.

By: *David A. Ward*

          David A. Ward, Its Attorney

**WARD AND METTI, P.C.**
2516 Waukegan Road, Suite 300
Glenview IL 60025-1774
(847) 657-8387
ARDC Number 06184451
Date: February 25, 2008