IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLOTTE HORTON, as guardian of Anna R. Richardson,<br><br>　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>COUNTRY MORTGAGE SERVICES, INC.; FREEMONT INVESTMENT AND LOAN CO., and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,<br><br>　　　　　　　　Defendants. | 2007 CV 6530<br><br>Judge Lindberg<br><br>Magistrate Nolan |

**COUNTRY MORTGAGE SERVICES, INC.'S FRCP 12(b)(6) MOTION TO DISMISS
COUNTS III AND IV OF THE SECOND AMENDED COMPLAINT**

　　　　Defendant, COUNTRY MORTGAGE SERVICES, INC. ("CMSI"), by and through its attorneys, DAVID W. INLANDER and RONALD D. MENNA, JR., of Fischel & Kahn, Ltd., as and for its FRCP 12(b)(6) Motion To Dismiss Counts III and IV of the Second Amended Complaint ("SAC"), states as follows:

　　　　1.　　This lawsuit arises from an alleged home improvement scam by JD Homes, Inc. ("JD"). According to the Plaintiff, after the JD received nearly $100,000 from plaintiff, who obtained those funds through a mortgage refinance loan, JD "never returned to [Ms. Richardson's] home to do any work", Complaint, ¶¶ 19-20, or "performed a minimal amount of work", SAC, ¶¶ 20-21, on plaintiff's two-flat building.

　　　　2.　　Plaintiff has sued CMSI (the mortgage broker), Freemont Investment & Loans (the lender), MERS (the nominee of the lender), and Wells Fargo Bank (the servicer of the loan). She has not sued JD.

　　　　3.　　On November 19, 2007, the original four count Complaint was filed, purporting to allege: (1) violations of the Truth in Lending Act (directed to Freemont and

MERS); (2) common law rescission of the Note (directed to Freemont and MERS); (3) violations of RESPA's Antikickback provisions (directed to Freemont and CMSI); and (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (directed to Freemont and CMSI).

4. On January 4, 2008, CMSI filed its Motion to Dismiss based upon the running of the applicable statutes of limitation as to Count III and for failure to state a claim as to Count IV.

5. On March 5, 2008, this Court entered an Order dismissing Count III as barred by the statute of limitations and Count IV for failing to state a cause of action.

6. On April 4, 2008, Plaintiff filed her four count First Amended Complaint ("FAC"). The FAC is substantially similar to the original Complaint, and purports to allege the same four causes of action.

7. On April 21, 2008, Plaintiff filed her four count Second Amended Complaint. The SAC is also substantially similar to the original Complaint, purports to allege the same four causes of action.

8. As is shown below, Count III is still barred by the applicable statue of limitations and Count IV still fails to state any viable claim against CMSI upon which relief may be granted.

## STATEMENT OF FACTS[1]

9. Anna Richardson owns a two-flat residence in Chicago, Illinois (the "Property"). SAC, ¶ 10. In 2003, Ms. Richardson refinanced her mortgage on the Property by obtaining a loan from Bank One which was serviced by Chase Home Finance. *Id.*, ¶ 11.

10. She developed dementia in 2004 and it developed into a form of severe dementia before October 2005. *Id.*, ¶ 12. Due to Ms. Richardson's failing medical condition, Plaintiff became Ms. Richardson's power of attorney and handled all of her financial affairs, including paying the monthly mortgage payments to Chase. *Id.*, ¶ 13.

11. In October 2005, JD convinced Ms. Richardson to allow it to perform some work on the Property. *Id.*, ¶ 14. JD said that it would arrange for the financing of the work and shortly thereafter, CMSI contacted her. *Id.*, ¶ 15.

12. On October 24, 2005, the loan at issue was closed at Ms. Richardson's home, with a CMSI loan officer present. *Id.*, ¶ 16. On information and belief, JD received over $100,000 from the loan proceeds, *id.*, ¶ 20, but only performed a minimal amount of work. *Id.*, ¶ 21.

13. "Subsequently, Chase sent notification to [Plaintiff] that its loan had been paid off. [Plaintiff], unaware of the recent events, contacted Chase to inquire about the source of the funds." *Id.*, ¶ 22. "[Plaintiff] became informed that a new loan for $150,000

---

[1] Because CMSI has moved to dismiss the complaint, the following allegations pertaining to the claims against it from the complaint, are taken as true for purposes of this motion. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F. 3d 449, 456 (7th Cir. 1998), *cert. denied*, 526 U.S. 1066 (1999).

had been secured by [Ms. Richardson's] home." *Id.*, ¶ 23.

14. "[Plaintiff] inquired of [Ms. Richardson] regarding the loan, and [Ms. Richardson] denied ever taking out a loan. [Ms. Richardson's] failure to remember taking out a loan was due to her unstable mental capacity arising from her dementia." *Id.*, ¶ 24. "[Plaintiff] sought legal assistance to open guardianship proceedings to assist [Ms. Richardson]. [Plaintiff] was appointed as the guardian of [Ms. Richardson's] estate on June 7, 2006." *Id.*, ¶ 25.

15. In Count III, Plaintiff alleges that CMSI violated the Real Estate Settlement Procedures Act, 18 U.S.C. § 2607(a), by receiving an illegal kickback in the form of a yield spread premium. *Id.*, ¶ 67.

16. In Count IV, Plaintiff contends that CMSI violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 by: "misrepresent[ing] … the amount of fees they [sic] would be charged in connection with the loan"; "fail[ing] to disclose … that it had entered into a scheme with Freemont"; "failing to disclose … that they [sic] were paying higher than market rate interest rate [sic] on the loans [sic]"; "fail[ing] to disclose … that it was going to obtain a higher profit from the loans due to the increased [sic] rate"; and "charg[ing] a fee in connection with the loans [sic] well in excess of the reasonable market rate [sic] for the services they [sic] performed." *Id.*, ¶ 80.

## ARGUMENT

17. A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." **Cushing v. City of Chicago**, 3 F.3d 1156, 1159 (7th Cir. 1993), *quoting* **Hishon v.**

*King & Spalding*, 467 U.S. 69, 73 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230*, 991 F.2d 1316, 1324 (7th Cir. 1993). However, the court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir. 1994).

I. **PLAINTIFF'S CLAIM FOR RESPA DAMAGES IS STILL BARRED BY THE ONE-YEAR STATUTE OF LIMITATION**

18. Plaintiff's claim for damages pursuant to the Real Estate Settlement Procedures Act, 18 U.S.C. § 2607(a) ("RESPA") (Count III), must be dismissed because it is still barred by the statute's one-year limitations period.

19. Although "[t]he Federal Rules of Civil Procedure provide that a statute of limitations defense is an affirmative defense which should be set forth in 'pleading to a preceding pleading,'" a limitations defense is "an appropriate ground for dismissal if it 'clearly appears on the face of the complaint.'" *E.E.O.C. v. Park Ridge Public Library*, 856 F.Supp. 477, 480 (N.D. Ill. 1994), *citing* **Rylewicz v. Beaton Services**, 698 F.Supp. 1391 (N.D. Ill. 1988).

20. In other words, "the complaint must facially show noncompliance with the limitations period." *Id., citing* **Morgan v. Kobrin Securities**, 649 F.Supp. 1023 (N.D. Ill. 1986).

21. Here, the complaint demonstrates the requisite "non-compliance" with the statute of limitations for RESPA.

22. Under RESPA, "[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court … within … 1 year in the case of a violation of section 2607 … of this title from the date of the occurrence of the violation …." 12 U.S.C. § 2614.

23. Count III alleges that the RESPA violations occurred during the October 24, 2005, closing. Because Plaintiff filed the Complaint on November 19, 2007, more than two (2) years after the allege violations occurred, her RESPA claim is time barred and should be dismissed.

24. Under the facts alleged in the SAC, Plaintiff still cannot properly contend her claims are timely, through application of the doctrine of equitable tolling, or through the federal discovery rule. In *Estate of Henderson v. Meritage Mortgage Corp.*, 293 F.Supp.2d 830 (N.D. Ill. 2003), the court, applying the federal discovery rule, extended the accrual date on an estate's claims under TILA, RESPA, and the Home Ownership and Equity Protection Act. *Id.*, at 833, 835. There, the plaintiff estate alleged that the deceased borrower, who suffered from "advanced Alzheimer's disease" at the time of the loan, "could not read, do simple arithmetic, consistently recognize her own son, feed or dress herself, remember the date or use the phone book to make phone calls." *Id.*, at 835.

25. Based on those specific allegations, the *Estate of Henderson* court concluded, the deceased borrower "lacked the ability to comprehend her injury and, due to advanced Alzheimer's Disease, to act upon her legal rights," which delayed accrual of the applicable limitations periods. *Id.* The court did not reach the question of equitable

tolling, but noted that the doctrine similarly could apply where "despite all diligence [the plaintiff] is unable to obtain vital information bearing on the existence of his claim." *Id*. at 834; *citing* **Cada v. Baxter Healthcare Corp.**, 920 F.2d 446, 451 (7th Cir. 1990).

26.     Here, unlike *Estate of Henderson*, the SAC contains no grounds to toll, or delay the commencement of, the one-year limitations periods contained in RESPA. Rather, like the original Complaint, Plaintiff *still* pleads that: (A) she was Ms. Richardson's "power of attorney and handled all of [Ms. Richardson's] financial affairs including the payment of her monthly mortgage payments to Chase", Complaint, ¶ 12, SAC, ¶ 13; (B) she was notified by Chase that "its loan had been paid off", Complaint, ¶ 21, SAC ¶ 22; (C) "unaware of the recent events, [Plaintiff] contacted Chase to inquire about the source of the payoff funds", *id.*; (D) she "became informed that a new loan for $150,000 had been secured by [Ms. Richardson's] home, Complaint, ¶ 22, SAC, ¶ 23; and (E) she contacted an attorney who assisted her in obtaining information regarding the subject loan", Complaint, ¶ 24, or she "sought legal assistance to open guardianship proceedings to assist [Ms. Richardson]" SAC, ¶ 24. Plaintiff has made Ms. Richardson's monthly payments of principal and interest on the subject loan to prevent a foreclosure. SAC, ¶ 30.

27.     At worst, Plaintiff still alleges that she was not provided with documents by CMSI until August 14, 2007. (Complaint, ¶ 24, SAC, ¶¶ 26-27.) This same fact did not prevent this Court from dismissing the original Complaint.

28.     Because the SAC, on its face, demonstrates that Plaintiff's RESPA claim is

time-barred, and because Plaintiff alleges no basis to toll or delay the accrual of the applicable one-year limitations periods, this claim must be dismissed.

I. **PLAINTIFF'S CANNOT STATE A CAUSE OF ACTION FOR BREACH OF THE ILLINOIS CONSUMER FRAUD ACT**

29. Plaintiff's other claim against CMSI, for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/2 (Count IV), should be dismissed for failure to state a claim upon which relief can be granted.

30. Under the ICFA, parties are prohibited from employing practices that are deemed, among other things, "unfair" or "deceptive":

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2.

31. In order to state a claim under the ICFA based upon the payment of a "yield spread premium" by a lender to a broker in violation of RESPA's anti-kickback provision, a plaintiff must allege: (1) the existence of an agreement between the lender and broker whereby the broker promises to refer settlement service business to the lender; (2) the transfer of a thing of value between the lender and broker based upon that agreement; (3) the referral of settlement service business by the broker to the

lender; and (4) either that (A) the broker received a yield spread premium without providing any goods or services of the kind typically associated with a mortgage transaction or (B) if the broker did provide such goods or services, the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided. *Johnson v. Matrix Financial Services Corp.*, 354 Ill.App.3d 684, 820 N.E.2d 1094, 1103-04 (1st Dist. 2004), *appeal denied*, 214 Ill.2d 534, 830 N.E.2d 3 (2005).

32.     A plaintiff must plead a consumer fraud claim with the same particularity and specificity that has always been a prerequisite to an action for common law fraud. *Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 836 N.E.2d 681, 692 (1st Dist. 2005).

33.     Here, F.R.C.P. 9(b) provides: "(b) *Fraud, Mistake, Condition of the Mind*. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

34.     The "particularity" requirement applies not only to claims expressly denominated as "fraud allegations", but also claims that are "grounded in fraud or "sound" in fraud, *see* **Borsellino v. Goldman Sachs Group, Inc.**, 477 F.3d 502, 507 (7th Cir. 2007), as well as other claims involving deceptive conduct. *See* **Simpson v. AOL Time Warner Inc.**, 452 F.3d 1040, 1046 (9th Cir. 2006).

35.     Thus, here, Plaintiff's conclusory allegations in SAC ¶¶ 65-67, 69, 75, and 80-84 still fail to comply with her obligations under F.R.C.P. 9 and she should either file a more definite statement pursuant to F.R.C.P. 12(e), be stricken pursuant to F.R.C.P. 12(f) or, alternatively, be dismissed pursuant to F.R.C.P. 12(b).

36.     Moreover, the IFCA expressly excludes, from its scope, "actions or transactions" that are "authorized" by federal or state law:

> Nothing in this Act shall apply to any of the following:
> (1)     Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.

815 ILCS 505/10b. *See also* **Bober v. Glaxo Wellcome PLC**, 246 F.3d 934, 941 (7th Cir. 2001) ("the cases stand for the proposition that the [ICFA] will not impose higher disclosure requirements on parties than those that are sufficient to satisfy federal regulations. If the parties are doing something specifically authorized by federal law, section 10b(1) will protect them from liability under the [ICFA]").

37.     If an action does not violate RESPA, then there is no claim under ICFA. *See Weatherman v. Cary-Wheaton Bank of Fox Valley*, 186 Ill.2d 472, 713 N.E.2d 543, 550 (1999) (concluding that "defendant's compliance with RESPA in this case renders defendant exempt from liability under the Consumer Fraud Act.").

38.     RESPA contains a safe harbor provision which exempts certain types of payments from being considered prohibited referral fees:

> **Section 2607. Prohibition against kickbacks and unearned fees**
> \* \* \*
> *(c)     Fees, salaries, compensation, or other payments*
> Nothing in this section shall be construed as prohibiting
> (1) the payment of a fee … (C) by a lender to its duly appointed agent for services actually performed in the making of a loan, (2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed, (3) payments pursuant to cooperative brokerage and referral arrangements or agreements between real estate agents and brokers, ….

12 U.S.C. § 2607(c).

39. In fact, recent cases in which the propriety of yield spread premiums have been raised find that they are not illegal kickbacks or referral fees. *See,* ***Culpepper v. Irwin Mortg. Corp.***, 491 F.3d 1266, 1273-74 (11th Cir. 2007); ***Schuetz v. Banc One Mortg. Corp.***, 292 F.3d 1004, 1014 (9th Cir. 2002), *certiorari denied*, 123 S.Ct. 994, 537 U.S. 1171 (2003).

40. These cases were decided after the 2001 HUD Statement of Policy, concerning the treatment of mortgage lender payments to mortgage brokers of yield spread premiums relate to RESPA, which holds that:

> It is HUD's position that neither Section 8(a) of RESPA nor the 1999 Statement of Policy supports the conclusion that a yield spread premium can be presumed to be a referral fee based solely upon the fact that the lender pays the broker a yield spread premium that is based upon a rate sheet, or because the lender does not have specific knowledge of what services the broker has performed. * * * Whether or not a yield spread premium is legal or illegal cannot be determined by the use of a rate sheet, but by how HUD's test applies to the transaction involved.

***Dominguez v. Alliance Mortgage Company***, 226 F.Supp.2d 907, 912 (N.D. Ill. 2002), *citing* Real Estate Settlement Procedures Act Statement of Policy 2001-1: Clarification of Statement of Policy 1999-1 Regarding Lender Payments to Mortgage Brokers, and Guidance Concerning Unearned Fees Under Section 8(b), 66 Fed.Reg. 53052, 53055 (October 18, 2001).

41. This is the gravamen of Plaintiff's case – the yield spread premium is an illegal kickback solely because of the alleged use of a rate sheet. SAC, ¶¶ 52-54.

42. Thus, Plaintiff cannot state a cause of action for breach of the IFCA.

43. In any event, since there is no cause of action under RESPA, there can be

no breach of the IFCA.

    44.    Therefore, Count IV should also be dismissed with prejudice.

Dated: May 12, 2008

**WHEREFORE,** for all the foregoing reasons, Defendant COUNTRY MORTGAGE SERVICES, INC. prays this Honorable Court enter an Order granting it the following relief:

    A.    Dismissing Counts III and IV with prejudice; and

    B.    Granting CMSI such further relief as the Court deems just and proper.

Respectfully submitted,
**COUNTRY MORTGAGE SERVICES, INC.**

By:   /s/ Ronald D. Menna, Jr.
       One of Its Attorneys

David W. Inlander
Ronald D. Menna, Jr.
**FISCHEL & KAHN, LTD.**
Suite 2850
190 S. LaSalle Street
Chicago, Illinois 60603
312-726-0440
312-726-1448 [FAX]
W:\DWI\T73-40 Country Mortgage Services adv Richardson (RDM)\Pleadings\MTD SAC.doc