IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLOTTE HORTON, as guardian of the estate of Anna R. Richardson, adjudicated disabled person,<br><br>                   Plaintiff,<br><br>v.<br><br>COUNTRY MORTGAGE SERVICES, INC.; an Illinois corporation; FREMONT INVESTMENT & LOAN, a California corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation; WELLS FARGO BANK, N.A., a national bank; and JOHN DOES 1-5.<br><br>                   Defendants. | 07 cv 6530<br><br>Judge Lindberg<br><br>Magistrate Judge Nolan |

RESPONSE TO COUNTRY MORTGAGE SERVICES, INC.
MOTION TO DISMISS TO SECOND AMENDED COMPLAINT

Now Comes Plaintiff CHARLOTTE HORTON, as guardian of Anna R. Richardson ("Anna"), an adjudicated disabled person, by and through her attorney Lloyd Brooks to submit this response to Country Mortgage Services, Inc. ("CMS") motion to dismiss counts III and IV of the second amended complaint as follows:

INTRODUCTION AND SUMMARY

Plaintiff filed this action seeking damages against CMS, a mortgage broker, arising out of a loan made to Anna while she as suffering from dementia. Counts III and IV of the second amended complaint asserts causes of action under RESPA and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") and seeks damages against CMS for its receipt of a kickback for arranging the loan. CMS has moved to dismiss Plaintiff's RESPA claim asserting it is time barred and moved to dismiss Plaintiff's state law consumer fraud claim arguing it is not sufficiently plead.

CMS' motion should be denied because Plaintiff has sufficiently pled that she did not discover the injury - and therefore the cause of action did not accrue - before August 14, 2007. Additionally, even if the RESPA claim accrued more than one year prior to the filing of this action, the doctrine of equitable tolling

should apply making the present action timely. As for the consumer fraud claim, Plaintiff has sufficiently plead the cause of action pursuant to the elements laid out in the Illinois appellate court decision <u>Johnson v. Matrix Financial Services Corporation</u>.

**FACTUAL BACKGROUND**

Anna is an elderly woman born on October 2, 1912 and is the owner of a two unit building located at 1647 S. Central Park Avenue in Chicago, Illinois for nearly 50 years. (Compl. ¶10) In ~~   ~~ March of 2003 Anna refinanced her mortgage on the property by taking out a loan with Bank One~~.~~ in the amount of $25,800. The loan was serviced by Chase Home Finance. (Compl. ¶11) Shortly thereafter, Anna developed dementia, which became a form of severe dementia before October of 2005. Due to Anna's failing medical condition, Horton became Anna's power of attorney and handled all of her financial affairs including the payment of her monthly mortgage payments to Chase. (Compl. ¶13)

In October of 2005 a general contractor contacted Anna, without Plaintiff's consent or knowledge, and convinced her to allow the company to perform some work on the property. The general contractor informed Anna that the company would arrange for financing of the work. Shortly thereafter Anna was contacted by a loan officer ~~with~~employed by CMS. (Compl. ¶15) On October 24, 2005 the loan officer visited Anna at her home and brought to her numerous documents to ~~concerning~~close the loan. (Compl. ¶16) ~~The loan officer was employed by Country Mortgage, a mortgage broker, who on information and belief, was contacted by the contractor to arrange for financing of the work that was to be done on Anna's home.~~

The loan officer did not explain any of the documents to Anna, nor could Anna read or understand the documents she was given. (Compl. ¶17) The loan officer instructed Anna to sign the documents and Anna complied. After Anna completed signing the documents the loan officer left with them and did not leave any copies for Anna's records. The contractor was given two checks from the proceeds of the loan

2

totaling over $100,000 by the title company or the loan officer, however the contractor performed very little of the work.

Unbeknownst to Anna or Plaintiff, CMS entered into a scheme with Fremont Investment & Loan ("Fremont") whereby CMS would refer upcharged interest rate loan business to Fremont in exchange for Fremont providing CMS with a yield spread premium for such referrals. (Compl. ¶62) The higher the upcharged interest rate that CMS arranged for, the higher the YSP paid by Fremont. (Compl. ¶54) CMS in fact referred the loan application for Anna to Fremont and CMS received a yield spread premium of $2,250.00 from Fremont in addition to the $~~\_\_\_.00~~$3,310.50 in loan fees.  CMS did not reveal to Anna that she was paying a higher interest rate or the relationship between the YSP payment and her stated interest rate. (Compl. ¶58)

Subsequently, Chase sent notification to Horton that its loan had been paid off.  Horton, unaware of the recent events, contacted ~~Case~~Chase to inquire about the source of the payoff funds.  Horton ~~was~~became informed that a new loan for $150,000 had been secured by Anna's home.  Horton inquired of Anna regarding the loan, and Anna denied ever taking out a loan.  Anna's failure to remember taking out a loan was due to her unstable mental capacity arising from her dementia. (Compl. ¶24)  Plaintiff contacted an attorney who assisted her in obtaining information regarding the subject loan.  Subpoenas were issued to CMS seeking documents in connection with the subject loan.  CMS failed to respond to the subpoenas, despite two petitions for rule to show cause for their failure.  Finally, on or about August 14, 2007 counsel for CMS forwarded certain documents related to the loan to counsel for Horton. (Compl. ¶27)  This was Plaintiff's first receipt of information that would substantially inform her of the terms and financial dealings surrounding the $150,000 loan.  Meanwhile, Plaintiff was appointed as guardian of Anna's estate on June 6, 2007. (Compl. ¶25)

Some of the documentation obtained included a Settlement Statement for the loan indicating the accounting for the loan proceeds and that the lender was Fremont.   The Settlement Statement reveals

3

that the principal loan amount was $150,000; the loan proceeds were $104,388.38; and the total fees paid to CMS were ~~$\_\_\_\_\_.~~ $5,560.50. (Compl. ¶28) CMS was paid a broker fee in the amount of $2,780.00, a processing fee of $495.00, and a yield spread premium in the amount of $2,250.00, a credit report fee of $10.50, and a courier fee of $25.00. (Compl. ¶61)

The Department of Housing and Urban Development (HUD) issued policy statements providing guidelines for compensable services provided by mortgage brokers in connection with the origination of a mortgage loan.  The guidelines reveal fifteen categories of compensable services, specifically outlined in the complaint. (Compl. ¶68)  In connection with Anna's loan CMS did not perform any of the HUD recognized services, other than the loan officer participated in the closing. (Compl. ¶70)  CMS' attendance at the closing was not worth the ~~$_____,~~ $5,560.50, which CMS received in connection with Anna's loan. (Compl. ¶71)  The amount of total compensation paid to CMS did not reasonably relate to the value of the services provided by CMS and is in excess of what other mortgage brokers in a similar transaction would be paid. (Compl. ¶70 - 71)  Instead, the amount Fremont paid was to compensate CMS for referring the loan. (Compl. ¶74)

## ARGUMENT

### The RESPA Claim Is Entitled To Application Of The Discovery Rule And Equitable Tolling, Which Make The Filing Of The Action Timely.

Plaintiff seeks damages on behalf of Anna, as her guardian, legally appointed on June 6, 2007.  As Anna's legal guardian, Plaintiff is the person responsible for bringing the present cause of action. See 755 ILCS 5/11a-18(c) (guardian of disabled adult has authority to appear on ward's behalf in all legal proceedings).  However, due to a lack of information, namely the closing documents showing the financial transaction that occurred, Plaintiff was unaware of the injury to Anna alleged in the RESPA claim.  It was not until August 14, 2007 that Plaintiff was provided information by CMS' counsel that Plaintiff was able to

4

identify the kickback being paid to CMS. Thus, under the federal discovery rule, the cause of action did not accrue before August 14, 2007 and this action was filed within one year of that time.

CMS argues that Plaintiff's cause of action died on or about November 24, 2006 (one year after the subject loan was made). However, CMS does not properly apply federal law concerning the accrual of a cause of action. Under federal law Plaintiff's cause of action did not begin to accrue until she became aware of her injury. *Clark v. City of Braidwood*, 318 F.3d 764 (7th Cir. 2003). Generally a RESPA claim for the payment of a kickback accrues on the date of closing. See *Thomas v. Ocwen Fed. Bank, FSB*, 01 c 4249, 2002 WL 99737 (N.D. Ill. January 25, 2002). However, here the RESPA claim did not accrue on the date of closing because of Anna's failing mental condition. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). Under Anna's mental condition no accrual could occur before Plaintiff was appointed as her legal guardian. *Clifford v. U.S.*, 738 F.2d 977, 980 (8th Cir. 1984); *Estate of Henderson v. Meritage Mortg. Corp.*, 293 F. Supp. 2d 830, 835 (N.D. Ill. 2003). Thus, this Court's analysis should focus on the point where Plaintiff discovered the injury. It is clear from the allegations made in the complaint that Plaintiff could not know about the kickback payment before obtaining the settlement statement disclosing the payments made to CMS. Therefore, Plaintiff had not discovered the injury resulting from CMS' unlawful act until at least August 14, 2007. It bears repeating that Plaintiff's inability to make an earlier discovery is due to CMS' refusal to respond to a subpoena issued to obtain the closing documents.

CMS overlooks Plaintiff's allegations regarding Anna's illness and the Plaintiff's efforts to obtain documentation regarding the subject loan. CMS also attempts in vain to distinguish the present case from *Estate of Henderson*, wherein, Judge Castillo held that the mental disability of a borrower was sufficient grounds to apply the discovery rule to a RESPA claim. *Estate of Henderson* is on all fours with the present matter. As in *Estate of Henderson*, the borrower suffers from a mental condition that precluded the borrower from understanding the ramification of her actions. 293 F. Supp. 2d at 835. Similarly, as in *Estate of Henderson*, the guardian here timely filed an action within one year of the discovery of the kickback.

5

Even if this Court finds the cause of action accrued more than a year prior to the filing of this case, Plaintiff's cause of action is timely under the equitable tolling doctrine. The equitable tolling doctrine "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain a vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Under the equitable tolling doctrine, "the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Id.* RESPA claims are amenable to analysis under equitable tolling. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004).

Here, Anna's mental disability prevented her from recognizing or pursuing any cause of action on her own behalf. Furthermore, in Anna's mental state she could not be of any assistance to Plaintiff in determining the events that occurred surrounding the loan. Plaintiff did not have the ability to bring a cause of action on Anna's behalf until after June 6, 2007, wherein her efforts to uncover the kickback were thwarted by CMS' refusal to provide documentation of the subject loan until after August 14, 2007. This action was filed on November 19, 2007, only three months later, shortly after CMS produced documentation regarding the loan and identifying the illegal payment made to CMS. Plaintiff has shown diligence in pursuing these matters, but due to Anna's mental condition and CMS' refusal to provide information; she lacked the ability to form a good faith basis to make allegations of wrongdoing. However, once Plaintiff received the information, a suit was filed. Plaintiff has alleged sufficient facts to apply the doctrine of equitable tolling to her RESPA claim.

### Plaintiff Has Sufficiently Plead A State Consumer Fraud Act Claim Against CMS For Its Acceptance Of A Kickback From The Lender For Negotiating An Upcharged Interest Rate Loan To Anna

Plaintiff has sufficiently plead her cause of action for a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). CMS asserts that Plaintiff has failed to plead her cause of action with

sufficient specificity, however CMS ignores Plaintiff's well plead facts. Plaintiff acknowledges that in order to plead a cause of action for the payment of a YSP under ICFA she must allege (1) the existence of an agreement between the lender and broker whereby the broker promises to refer settlement service business to the lender; (2) the transfer of a thing of value between the lender and broker based upon the agreement; (3) the referral of settlement service business by the broker to the lender, and either (4) the broker received a YSP without providing any goods or services of the kind typically associated with a mortgage transaction or (5) if the broker did provide such goods or services, the total compensation paid to the broker was not reasonably related to the total value of the goods or services actually provided. *Johnson v. Matrix Financial Serv. Corp.*, 354 Ill. App. 3d 684, 695 820 N.E.2d 1094 (2004).

Plaintiff has met her burden under Johnson v. Matrix Financial to allege a cause of action for the receipt of an illegal payment of a kickback by CMS. Plaintiff's allegations are in accordance with the pleading requirements as found under Johnson v. Matrix Financial Serv. Corp. Here Plaintiff has alleged:

> ¶62    CMS arranged for a loan with Fremont on behalf of Anna, however unbeknownst to Anna, Fremont and CMS had previously entered into a scheme whereby CMS would refer business to Fremont in exchange for Fremont providing CMS with a yield spread premium for such referrals.
>
> ¶¶61, 63    CMS in fact referred Anna's loan application to Fremont and CMS received a yield spread premium of $2,250.00 from Fremont in addition to the $3,310.50 in loan fees that Anna paid directly to CMS.
>
> ¶¶68 - 71    The amount of total compensation to CMS did not reasonably relate to the value of the services provided by CMS and is in excess of what other mortgage brokers in a similar transaction would be paid.

The above allegations are sufficient to find that (1) there was an agreement between Fremont and CMS for the referral of loans (Compl. ¶62), (2) that a thing of value was passed from Fremont to CMS based upon the agreement (Compl. ¶¶63), (3) that CMS referred Anna's loan to Fremont (Compl. ¶63), and (5) the total compensation paid to CMS was not reasonably related to the total value of the goods or services actually provided by CMS (Compl. ¶¶68 - 71). Pursuant to Johnson v. Matrix Financial Serv. Corp., Plaintiff's allegations are sufficient and therefore, CMS' motion should be dismissed.

CMS attempts to down play and put a positive spin on its acceptance of yield spread premiums, but it has been clearly shown that payment and receipt of yield spread premiums are an ongoing concern to consumers. See Howell E. Jackson, Predatory Mortgage Lending Practices: Abusive Use of Yield Spread Premiums, testimony before U.S. Senate Committee on Banking, Housing, and Urban Affairs (Jan. 8, 2002), available at http://banking.senate.gov/02_01hrg/010802/jackson.htm. Although HUD has not considered the use of YSPs illegal *per se*, HUD recognizes the potential for abuse of YSPs by unscrupulous lenders and mortgage brokers looking to pad their pockets. *See* HUD 2001 Policy Statement, 66 F.R. 53052, 53034. HUD also found that the payment of yield spread premiums may be the basis of a RESPA claim, making CMS' argument - that a YSP payment is not actionable - quite remarkable.

CMS argues that Fed. R. Civ. Pro. Rule 9(b) applies, requiring Plaintiff to plead with particularity as in causes of action for fraud. CMS forgets that ICFA covers unfair practices as well as those for deceptive acts. Courts in this District have found that causes of action for unfair practices under ICFA are not subject to the prescripts of Rule 9(b). *Morton Grove v. National Pediculosis Assoc., Inc.*, 525 F. Supp. 2d 1039, 1048 – 49 (J. Bucklo, 2007); *Sotelo v. Direct Revenue, LLC*, 384 F. Supp. 2d 1219, 1233 (J. Gettleman, 2005). The payment or receipt of a kickback is more akin to an unfair practice than a fraudulent misrepresentation. In fact, a plaintiff need not prove any misrepresentation or deception at all to be successful in a yield spread premium claim under ICFA. Thus, general federal law pleading standards under Rule 8(b) are applicable. Nonetheless, as described below, Plaintiff has alleged sufficient facts to meet the standard under either Rules 8(a) or 9(b).

CMS asserts that paragraphs 65 - 67, 69, 75, and 80 - 84 contain conclusory allegations, which require a more definite statement, to be stricken, or dismissal. CMS ignores the specific allegations made against it by Plaintiff describing how the loan was made; the nature of the relationship between CMS and Fremont; how the payment of the YSP relates to Anna's increased interest rate; and, CMS was paid $5,560.50 for in exchange for the minimal services it provided. The paragraphs cited by CMS simply set

8

forth factual statements, which are further supported by other allegations made within the complaint. For instance, paragraph 80 summarizes the unfair practices used by CMS in connection with the receipt of the YSP it received, as described in paragraphs 50 – 71 of the second amended complaint. CMS' citation to the remaining paragraphs is equally uneventful. Plaintiff's allegations are sufficiently specific such that a more definite statement or dismissal is not warranted. Further, the allegations are not mere surplusage or slanderous in any way making CMS' request to strike them inappropriate. *Porter v. IBM*, 21 F. Supp. 2d 829 (N.D. Ill. 1998) (moving party must show that allegations are unrelated to plaintiff's claims and that allowing allegation to remain in the complaint would be unfairly prejudicial). See also *Anderson v. Board of Ed. Of Chgo.*, 169 F. Supp. 2d 864 (N.D. Ill. 2001). CMS' assertion that Plaintiff alleges a violation merely based upon rate sheets is groundless. Plaintiff alleges CMS performed very little, if any, services for Anna, but was paid at least $5,560.00 from Anna's loan proceeds. CMS' compensation is unreasonable when compared to the market rate for its services and rightfully considered a kickback in violation of RESPA.

    CMS' last gasp is its argument that Plaintiff may not plead a cause of action for the payment of a yield spread premium under the state consumer fraud act. Plaintiff's argument contradicts itself. In its motion CMS concedes that a YSP claim can be brought under the state consumer fraud act as allowed under Johnson v. Matrix Financial. (CMS Mtn. p. 9) Then in an about face, CMS argues that a state consumer fraud act claim can not be made because a YSP payment <u>may</u> be allowed under RESPA. As noted earlier, HUD has found the payment and receipt of YSPs troubling and a basis for a RESPA cause of action. Therefore, any argument by CMS that YSPs are per se legal is a non starter. Instead, HUD and the courts have invoked a case by case analysis, whereby the mortgage broker's compensation is compared to the value of the services provided. Plaintiff has alleged that the compensation paid to CMS is unreasonable in amount and therefore, a violation of RESPA's ant kickback provisions. If an action violates RESPA then a cause of action also exists under ICFA. *Johnson v. Matrix Fin. Servs.*, 354 Ill. App. 3d at 695. See also *Watson v. CBSK Fin. Group*, 197 F. Supp. 2d 1118 (N.D. Ill. 2002). Therefore, CMS'

assertion that an ICFA claim cannot be alleged where a YSP payment has been made, such that the mortgage broker is over compensated, is groundless.

**CONCLUSION**

For all of the reasons stated above this Court should deny Country Mortgage Services, Inc.'s motion to dismiss Counts III and IV of the second amended complaint.

Respectfully Submitted,

/s/   Lloyd Brooks
_____
Attorney for Plaintiff

State Bar No. 6271994
Lloyd Brooks
The Brooks Law Firm
15008 Woodlawn Avenue
Dolton, Illinois 60419
(708) 841-8000 Telephone
(708) 841-8080 Facsimile
E-mail: lloyd.brooks@thebrooksfirm.com